OPINION OF THE COURT
John J. Conway, J.
The factual background of this proceeding though uncomplicated, presents constitutional issues which this court must decide. They are brought before this court on a CPLR article 78 review of a determination made by the New York State Department of Health (hereinafter called department).
Petitioner is a 72-year-old patient at the Rochester Psychiatric Center, having been involuntarily admitted there in June, 1973. In February, 1977 an order for retention of the patient, Celia Berd, at the Rochester Psychiatric Center was signed by Justice Joseph G. Fritsch of Supreme Court, Monroe County. Although petitioner had available to her the right to request a hearing on the issue of her retention, none was sought.
*162 In addition to her mental distress, petitioner is afflicted with serious physical ailments. She suffers from acute diabetes, is partially blind, is only partially ambulatory and requires help with her daily routine.
During the summer of 1977 an effort was made on behalf of the petitioner to have her placed in a skilled nursing home. The staff at the Rochester Psychiatric Center acquiesced in the plan and apparently assisted in the effort. The Jewish Home and Infirmary in Rochester accepted petitioner for placement, but that did not assure her placement there.
As petitioner is a recipient of Medicaid, her proposed transfer came under the jurisdiction of the department. That department, pursuant to section 364-a of the Social Services Law, has been charged with the administration and supervision of the medical care and services under the medical assistance program for needy persons in this State. In accordance with the charge placed upon it by section 364-a , of the Social Services Law, the department has promulgated the State medical handbook which contains the regulations applicable to the medical assistance program. (See Lang v Berger, 427 F Supp 204.)
A reading of the medical handbook reveals that a great responsibility devolves on the local medical directors to evaluate the availability of medical care and medical care facilities and to plan for the most resourceful delivery of these services. In pursuance of these objectives, the local medical director for Monroe County, Dr. D. K. Stockdale, prepared a list of priorities to be used in the placement of medical assistance patients in nursing homes. It was his judgment that those patients who were already in institutions run by the Department of Mental Hygiene had comparatively less need than others. Accordingly, they were given a priority 7, the lowest priority out of seven listed.
Because the number of elderly persons receiving medical assistance who are eligible for nursing home care vastly exceeds the available beds, being in priority number 7 virtually assures that the person will never be approved for nursing home care by the department. This is exactly what occurred in petitioner’s case. Although a placement in the Jewish Home had been secured for her, the department blocked the actual placement on the basis that she had the lowest priority for such a placement and that care was being adequately provided at the Rochester Psychiatric Center.
*163 Petitioner now challenges the determination of the Department of Health which denied the sought after placement at the Jewish Home and focuses her attack on the constitutionality of the priorities set by the local medical director. It is noteworthy that petitioner is not attacking the propriety of her retention at the Rochester Psychiatric Center, although it is stated that she has received no significant psychiatric care in the past two years.
Two constitutional objections are lodged against the determination of the department; one, that it was predicated on a list of priorities that unconstitutionally discriminated against petitioner and consequently violated petitioner’s equal protection rights. The second is that the determination violated the requirements of due process of law in that petitioner was denied any opportunity to be heard as to the individual merits of her transfer. It is also asserted that the determination, being based on absolute and arbitrary standards, failed to consider individual patient’s circumstances and inherently violates due process.
In order to appraise petitioner’s claim that the determination by the department violates her rights under the Fourteenth Amendment to the United States Constitution and section 11 of article I of the New York State Constitution, the court must decide on the proper standard for review. The court must elect among the strict scrutiny test, the more lax standard of rationality or a middle ground test such as requiring the existence of a substantial State interest. To pass constitutional muster the court would have to find that under the standard selected, the requisite State interest in having classifications exists. (Alevy v Downstate Med. Center of State of N. Y., 39 NY2d 326.)
Petitioner urges the court to adopt a strict scrutiny test in this instance on the grounds that the determination employed a suspect classification of petitioner. Previously identified by the United States Supreme Court as suspect are classifications based on alienage (Matter of Griffiths, 413 US 717), national origin (Hernandez v Texas, 347 US 475; Takahashi v Fish Comm., 334 US 410, 418, 420), and race (Loving v Virginia, 388 US 1; McLaughlin v Florida, 379 US 184). Although no such classification is involved here, petitioner argues that the criteria set forth in San Antonio School Dist. v Rodriguez (411 US 1, 28) should lead to the conclusion that a suspect classification was dealt with here. There it was said (p 28) that a *164 suspect class is one "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.”
Whether classifications based upon a person’s status as being mentally ill are actually suspect was a question which the United States Supreme Court did not answer in the heralded case of O’Connor v Donaldson (422 US 563). (Cf. 3 Hastings Constitutional Law Quarterly, 599, 611, 612.)
This court is not of the opinion that the class dealt with by the priority list is a suspect one. It would be more appropriate to denominate the classification dealt with by the department as being "need for placement in a skilled nursing home.” The priorities announced by the local medical director reflect his judgment as to the urgency of each separate classification for skilled nursing home care. The fact that petitioner is placed in the lowest priority is a product not of her being mentally ill, but rather the rational assessment that adequate provision is being made for her health, relative to other needy persons.
As an alternative argument for the application of the strict scrutiny test, petitioner claims that the classification affects a fundamental interest thereby requiring the department to show a compelling State interest for its priority list. (See Dunn v Blumstein, 405 US 330; Harper v Virginia Bd. of Elections, 383 US 663; Shapiro v Thompson, 394 US 618, and Police Dept. of Chicago v Mosley, 408 US 92.) It is asserted that the denial of the transfer has deprived petitioner of certain of her fundamental rights, including the right to vote, freedom of speech, freedom of association, freedom of petition and right to privacy. It is claimed that as long as she remains a patient at Rochester Psychiatric Center, the exercise of those rights will be subject to restraint.
What is at stake here is not the exercise of these unquestionably fundamental rights by petitioner, but instead whether petitioner is entitled to a transfer free from consideration of countervailing circumstances. The implication of her constitutional rights is not a direct result of the determination to deny her transfer. It is derived from the findings pursuant to sections 9.27 and 9.33 of the Mental Hygiene Law (formerly §§ 31.27 and 31.33) that the patient is mentally ill and requires continued retention for care and treatment. The court having made that determination, the mental institution is not *165 compelled to release or transfer the patient until such time as it is established that her retention is no longer required.
In any event it is extremely doubtful that any impingement of fundamental constitutional rights would be abated if the petitioner were in fact transferred. The constant care and confinement and its consequential detrimental effect on her rights would be just as extensive. The restraints placed on petitioner’s exercise of her rights are not a product so much of where she is institutionalized as they are of the unfortunate fact that she is unable to take adequate care of herself.
Thus, the petitioner has failed to establish that the priority list penalizes her for the exercise of any of her constitutionality guaranteed rights.
The proper test to apply in this instance is the rational basis test. As the court in Alevy v Downstate Med. Center of State of N. Y. (39 NY2d 326, 332, supra) stated: "The test has been applied with great indulgence, especially in the area of economics and social welfare where, for example, it has been said that '[i]f the classification has some "reasonable basis,” it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality” ’ ”. (Citing Dandridge v Williams, 397 US 471, 485; see, also, Matter of Levy, 38 NY2d 653; Matter of Figueroa v Bronstein, 38 NY2d 533; Gleason v Gleason, 26 NY2d 28; Matter of Bauch v City of New York, 21 NY2d 599.)
The rationale for the priority list is obvious. Since the number of medical assistance patients needing nursing home care exceeds the number of openings at these private facilities, the department has two choices. It could either allow placement of the patients solely on a first come, first served basis or it could adopt a priority system so that the most needy would get preference. Clearly the latter approach, which is the one the local medical director adopted, is preferable as it does the most good with available resources.
The court must now turn its attention to a consideration of whether the determination of the department violates present day notions of due process under the Fourteenth Amendment to the United States Constitution, and section 6 of article I of the New York State Constitution. It is the petitioner’s contention that there has been a deprivation of both liberty and property in this case. The claim of deprivation of liberty is based on petitioner’s compelled existence *166 within the confines of the mental institution. As for the claim of deprivation of property, it is argued that the petitioner has been stigmatized by her status as a patient at a mental institution. She asserts that such a stigma amounts to a deprivation of property because it deprives the individual of her proprietary right to a good name and reputation. The petitioner cites Wisconsin v Constantineau (400 US 433) as authority for this proposition.
The more recent case of Paul v Davis (424 US 693) clarified the holding in that case. The court said (p 701): "While we have in a number of our prior cases pointed out the frequently drastic effect of the 'stigma’ which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty’ or 'property’ by itself sufficient to invoke the procedural protection of the Due Process Clause.”
Petitioner has failed to demonstrate that the stigma is associated with a further deprivation of either liberty or property. Additionally it is clear that the department’s denial of transfer to petitioner did not in any way suggest that petitioner’s good name, reputation, honor or integrity were at stake. The determination simply reflects the tough decisions that must be made as a consequence of the scarcity of beds at skilled nursing homes for patients receiving medical assistance. It is worth repeating that the determination is based on a finding that the patients at mental institutions are receiving adequate care, relative to other needy persons. That determination is no personal reflection on petitioner.
Turning to petitioner’s claim that the determination deprived her of liberty without due process, it must be noted that this case is not from the same mold as Bartlett v State of New York (52 AD2d 318) and O’Connor v Donaldson (422 US 563, supra). In Donaldson it was stated (p 576): "a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends.” Such is not the state of facts here. Petitioner had the opportunity as recently as February, 1977 to contest the propriety of her retention at Rochester Psychiatric Center, but she chose not to do so. She is now foreclosed from disputing that her retention at Rochester Psychiatric Center based on the standards set forth in sections 31.27 and *167 31.33 of the Mental Hygiene Law (now §§ 9.27, 9.33) is called for. Furthermore, there is no private placement with friends or family available to petitioner. Her placement at the Jewish Home could be accomplished only with the assistance of public funds. The State has the obligation of seeing to it that those funds are expended in the most resourceful manner possible.
Given the valid commitment, the question then becomes whether petitioner is entitled to be heard individually by the department before the transfer is rejected. Petitioner contends that the out-of-hand denial of the transfer without consideration of merits of the individual case amounts to a deprivation of liberty without due process. Does the nature of the interest at stake here, transfer of a validly committed patient at Rochester Psychiatric Center to a skilled nursing home, invoke procedural due process protection? (See Morrissey v Brewer, 408 US 471, and Board of Regents v Roth, 408 US 564.)
"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment’s protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.” (Board of Regents v Roth, supra, pp 569-570.)
Considering all of the facts of this case and the practicalities faced by the department, it is the determination of this court that the petitioner has no right to be heard individually on the transfer.
In Meachum v Fano, decided June 25, 1976 (427 US 215), the Supreme Court held the transfer of prisoners from one State prison to another did not implicate a liberty interest of the prisoner within the meaning of the due process clause so as to entitle him to be heard on the question of his transfer. In holding so, the court stated (p 224): "We reject at the outset the notion that any grievous loss visited upon a person by the State is sufficient to invoke the procedural protections of the Due Process Clause.”
As an adjunct to that holding it may be declared that there is no right to the procedural due process protection of a right to a hearing where there is a denial of transfer to a patient at a mental institution. To hold otherwise would place a serious burden on the department in its allocation of bed space at skilled nursing homes to medical assistance patients by re *168 quiring that any patient deemed ineligible for placement be granted a hearing before he is passed over to give the space to a more needy person. This court is not prepared to mandate such requirements as will disrupt the organized plan of an experienced administrative agency in its dealing with emergency needs.
Accordingly, the petition is dismissed as the classification utilized by the Department of Health was not arbitrary and the determination not to transfer petitioner did not violate any of her constitutionally guaranteed rights. The determination of the department is therefore affirmed.