OPINION OF THE COURT
Jones, J.
The procedures presently available to both children and their parents to obtain judicial review of out-of-State placement of emotionally disturbed and mentally retarded children meet the requirements of both the Federal and our State Constitutions.
This action was brought as a class action for declaratory and injunctive relief and for damages. Plaintiff Carlos Sinhogar (a pseudonym) is described in the complaint as an emotionally disturbed 17-year-old child who had been placed in the custody of the New York City Department of Social Services following an adjudication by Family Court that he had been neglected by his parents, both of whom have since died. It is alleged that on February 15, 1977 Carlos was sent to an institution in Roanoke, Virginia, which provided care to children who are mentally ill or mentally defective, or both. He is represented in this action by Dr. Kenneth Clark, his guardian ad litem.
Plaintiff Jeannette Morgan (also a pseudonym) is similarly described in the complaint as a 17-year-old emotionally disturbed child who was placed in the custody of the New York City Department of Social Services by her aunt in 1974. It is alleged that in May, 1976 Jeannette was sent to a school in Hialeah, Florida, which also provides care for children who are mentally ill or mentally defective, or both. She, too, is represented in this action by Dr. Kenneth Clark, who is likewise her guardian ad litem.
*429 Plaintiff John Evans is described in the complaint as a retarded 16-year-old child living with his parents in Brooklyn, New York. It is alleged that he has been evaluated as in need of placement outside his home which his parents cannot afford and that defendants Smith and Parry have failed and refused to offer him placement within the State although they have offered placement for him outside the State.[1] He is represented in this action by John and Sylvia Evans, his parents and guardians.
Named defendants in the action were: Carol Parry, Assistant Administrator of Special Services for Children, an agency within the New York City Human Resources Administration, the Department of Social Services (the agency alleged to be responsible for supervising and approving care for New York City children in need of care), J. Henry Smith, administrator of the Human Resources Administration of the City of New York and Commissioner of the New York City Department of Social Services, and Philip Toia, Commissioner of the New York State Social Services Department. Each of these defendants was named individually and in his or her official capacity.
Prior to the service of an answer on behalf of any of the named defendants, by order to show cause signed August 18, 1977, plaintiffs moved for partial summary judgment and for class action certification. On December 27, 1977 defendant Toia made a motion to dismiss the complaint for failure to state a cause of action on which relief could be granted and, on February 17, 1978, a motion to substitute Barbara B. Blum as Commissioner of the New York State Department of Social Services and to dismiss the complaint as to him personally.
By decision and order dated January 16, 1979 Supreme Court: (1) granted the motion for substitution; (2) denied the motion to dismiss as to Toia personally; (3) denied the application for class action status; (4) denied plaintiffs[1] motion for partial summary judgment based on assertions *430 that the out-of-State placements violate the provisions of the Social Services Law (§ 398, subd 6, par [g]) and that the placements were not provided for under section 374-a of that law (on the ground that questions of fact existed) ; (5) granted plaintiffs’ motion for partial summary judgment premised on the contention that out-of-State placements pursuant to the Interstate Compact on Placement of Children violated plaintiffs’ rights to due process, to the extent of directing defendants to submit to the court a proposal for a review procedure whereby a parent or guardian could challenge an out-of-State placement;[2] (6) denied defendant Toia’s motion to dismiss the complaint on the ground that plaintiffs had not legally established the existence of a right to treatment; and (7) denied plaintiffs’ motion for summary judgment enjoining all further out-of-State placements and granted defendant Toia’s counter motion to dismiss the allegations in the complaint that out-of-State placements constituted an unlawful delegation by the State officials (98 Misc 2d 28).
On appeals by the city and the State officials defendants, the Appellate Division modified to declare out-of-State placement of foster care children pursuant to the Interstate Compact on Placement of Children (ICPC) constitutional and to grant defendant Toia’s motion to dismiss the complaint against him in his individual capacity, and as so modified, affirmed the order of Supreme Court.[3] We now direct dismissal of the complaint to the extent that it seeks damages against Commissioner Blum and otherwise affirm the disposition at the Appellate Division.[4]
*431 First, we clear away the preludial underbrush. No objection was raised to the substitution of Barbara B. Blum as Commissioner of the New York State Department of Social Services. To the extent that plaintiffs assert a right to recover damages against Commissioner Blum their claim must be dismissed; claims against the State and its officers acting in their official capacity are cognizable only in the Court of Claims. For the reasons stated by Justice Joseph P. Sullivan at the Appellate Division, the complaint against Philip Toia in his individual capacity was properly dismissed (cf., also, 15k East Park Ave. Corp, v City of Long Beach, 52 NY2d 991). Finally in this category, we observe that both courts below have held, and we agree, that whether there has been a denial of the substantive constitutional rights of any of these three children and whether the statutory rights of any of them under sections 374-a and 398 (subd 6, par [g]) of the Social Services Law, have been violated cannot be determined on the present motions to dismiss and for summary judgment. Allegations have been made and questions of fact have been raised requiring disposition of these issues by trial, for which purpose the case will be remitted. Accordingly, it would be premature and inappropriate on the present appeal to address matters which can only be resolved after trial. There remain then for our consideration and disposition two basic contentions advanced by appellants: first, that irrespective of what may prove to have been the factual context in these particular cases, the Constitutions mandate that advance notice and an opportunity to be heard be afforded prior to each out-of-State placement; and, second, that the procedures now available for postplacement judicial review do not meet constitutional due process requirements.
We turn then to the substance of plaintiffs’ contention that present procedures for the out-of-State placement of emotionally disturbed and mentally retarded children deny them their constitutional rights to due process. Their argument is premised on a claim of constitutional rights of two sorts. They assert, first, that any out-of-State placement adversely and impermissibly affects what they characterize as “the fundamental right to an ongoing family relationship of the parents and children involved”, and, second, that *432 such placement similarly affects what they describe as “the child’s separate, constitutionally protected entitlement to certain state-created benefits which, in this case, arise from New York statutes and regulations”. The asserted denial of the first such right is based on the fact that a placement hundreds or perhaps thousands of miles away from the home of parents and siblings will likely place severe strains on familial visitations and other communications. The claim of denial of the second such right is grounded in a lack of assurance that the quality of care in out-of-State facilities, including food, clothing, shelter and medical treatment, will equal that provided in in-State institutions which are under the supervision and control of city and State social service officials. The ultimate gravamen of their complaint is that there are presently no procedures available to plaintiffs or to their families to assure the adequate protection and enforcement of these two underlying “constitutional” rights.
Because there remain for disposition, following the development of factual evidence at trial, the claims advanced that the out-of-State placements of these three children have operated to infringe impermissibly the two substantive entitlements asserted on their behalf, it is unnecessary and would be inappropriate for us now to consider whether these plaintiffs do have either or both of the substantive constitutional rights that they claim or, if so, to delineate the contours of such rights or to address the propriety of the placements or the adequacy of the care and treatment thereby provided. Similarly, we refrain from consideration in the abstract of the legal standard by which the propriety of such placements or the adequacy of such care and treatment is to be judged. We are not sure that any legal template can be designed by the mechanical overlay of which on given factual situations the protection of the legitimate interests of children and parents can readily be measured. We decline plaintiffs’ invitation to make sweeping pronouncements. Accordingly, at this stage of the present litigation we do not express our agreement or disagreement with the standard of measurement adopted either at Supreme Court or in the Appellate Division. That issue is *433 expressly left open for appropriate resolution in the light of the evidence to be introduced at trial.
The core issue before us on this appeal is whether procedures now available to the children and to their parents for review of the out-of-State placements made and the care and treatment received by plaintiffs in consequence thereof meet the mandate of constitutional requirement. We conclude that they do.
The review procedures available are to be measured against the constitutional standards prescribed by the Supreme Court of the United States.[5] The constitutional sufficiency, from the view point of the foster parents, of New York’s statutory system for regulating placement of children in foster care has been determined (Smith v Organization of Foster Families, 431 US 816). In that case the court expressly rejected the contention that, assuming the presence of a “liberty” interest within the protection of the Fourteenth Amendment, considerations of due process mandated a preremoval judicial hearing (id., pp 847-856; cf. Parham v J. R., 442 US 584).
With respect to the present out-of-State placements, they did not constitute the initial interruption of the natural family setting or the transfer of the children from the natural parents to placement in foster care. That had occurred previously and is not the subject of our present review or concern; nothing said in this' opinion relates to the rights of children or their natural parents incident to the removal of the children from the natural family. What we address here are the constitutional rights of children who have already left the natural family setting when there is a subsequent transfer from foster care within the State to foster care in an out-of-State institution.
The Appellate Division detailed New York’s procedural scheme for judicial review of placements out-of-home and of changes in placements, as supplemented by the ICPC’s mandate for individual evaluation of the children and for independent review procedures by both the sending and receiving State, analyzed the statutory provisions, and *434 found them sufficient when examined in the light of the recent Supreme Court decisions as to the due process rights of children (74 AD2d 204, 210-213). No sufficiently useful purpose would be served here by repetition or paraphrase of that careful exposition with which we are in agreement. We content ourselves with addressing the points of assault mounted by plaintiffs in our court, recognizing, as did the Appellate Division, that plaintiffs’ attack is basically premised on their contention that each emotionally disturbed or mentally retarded child placed in foster care is entitled to an individualized treatment program appropriate to his or her own needs and their ultimate focus is on what is asserted to be the impropriety of the placements in these instances and the insufficiency of the attendant care and treatment, measured against what plaintiffs contend are their statutory and constitutional rights — the substantive issues that we reserve in toto for resolution after trial.
With respect to what they assert are the constitutional deficiencies of available procedures for review of out-of-State placements and the care and treatment thereby furnished, plaintiffs advance serveral arguments. First, it is their submission that the natural parents are constitutionally entitled to prior notice of every prospective out-of-State placement and that they frequently do not receive advance notice of administrative decisions to make such placements.[6] There is no such categorical constitutional right, and plaintiffs cite no authority so holding.[7] Neither the *435 Congress nor the Department of Health and Human Services has regarded prior notice or formal review procedures as in the category of fundamental due process rights or mandated provision therefor by all States receiving Federal foster care reimbursement.[8]
Once an out-of-State foster care placement has been made, statutory provision is immediately available pursuant to which a parent or guardian may challenge the removal from an in-State placement and the transfer to an out-of-State placement. As the Appellate Division noted, administrative review may be had at the instance of “ [a]ny person aggrieved by such decision” in a fair hearing (Social Services Law, § 400, subd 2). The fair hearing determination in turn may be subjected to judicial scrutiny in a CPLR article 78 proceeding.
Additionally, and ultimately, a proceeding initially commenced under CPLR article 78 is available to review the determinations of any public official or administrative officer. Plaintiffs concede that “an Article 78 proceeding does *436 provide a forum for the review of a decision to send a child to an out of state institution”. They find this unacceptable, however, inasmuch as it assumes knowledge on the part of the parent of the fact of the out-of-State placement and involves “a procedure so burdensome and costly as to be unavailable to almost all of the children and families whose lives have been affected by defendants’ out-of-state placement practices.” Unquestionably, means could be found to assure the opportunity sought by plaintiffs for timely and inexpensive participation of the natural parents in decisions with respect to out-of-State placements. The issue before us, however, is not whether it would be desirable to give parents advance notice of out-of-State placements, whether more expeditious or streamlined review procedures might be designed or whether as a matter of sound and fair governmental policy a more efficacious review procedure might be desirable or might be determined by the State and local administrative agencies or the Legislature to be preferable. The issue is whether the Constitutions mandate the provision of review procedures which are not now available and which would be beyond impairment or diminution by either administrative or legislative action. We conclude, in agreement with the Appellate Division, that they do not.
For the reasons stated, the order of the Appellate Division should be modified, without costs, to direct dismissal of the complaint to the extent that it seeks damages against Commissioner Blum, and, as so modified, affirmed.

. We are told that the foster care placements described in the complaint are no longer in effect and that there have been several other changes in the status of the individual plaintiffs. Such factual developments, while they will be relevant on trial, do not affect the legal issues on which our disposition of the present appeal is based.

. Plaintiffs’ contention that the out-of-State placements violated the constitutional equal protection clauses was adverted to but was not resolved.

. No appeal was taken from the denial of class action status. Accordingly, only the claims of the three individual plaintiffs are in issue.

. Plaintiffs’ appeal to our court taken as of right, except insofar as it was taken from that portion of the order of the Appellate Division that granted defendant Toia’s motion to dismiss the complaint against him in his individual capacity, was dismissed on the ground that the remainder of the Appellate Division order was nonfinal (50 NY2d 1022, mot to vacate dismissal den 51 NY2d 797). Plaintiffs thereupon made application to the Appellate Division for permission to appeal from the nonfinal portion of the order of that court and permission was granted. At the same time that court also granted permission to defendant Toia to cross-appeal and later granted defendants Parry and Smith similar permission.

. We perceive no sufficient reason to erect a different or more demanding set of standards under our State Constitution.

. As was observed at the Appellate Division, in the event of a judicially ordered out-of-State placement the parents would receive notice (74 AD2d 204, 210-211).

. Comparison with practice in other States may be considered as indicating whether a particular practice is so widely followed as to suggest that it is to be ranked as fundamental (McKeiver v Pennsylvania, 403 US 528, 548). The Children’s Defense Fund conducted a survey of all 50 States for the period March to July, 1976 (Children Without Homes, Children’s Defense Fund, Washington, D.C., 1978). It found that six States had a rudimentary administrative procedure applying, in effect, more stringent review procedures (other than the ICPC) to out-of-State placements. One other State was reported to be considering administrative action (op. cit., pp 68-70). The remaining 43 States apparently made no administrative provision for prior notice or review. Not one State was reported to give parents or children greater statutory rights to notice of a placement out of State than of one within the State or to authorize challenges in the one case but not in the other except to the extent provided in *435 the Interstate Compacts on Placement of Children, on Mental Health or on Juveniles — all of which are law in New York (Social Services Law, § 374-a; Mental Hygiene Law, § 67.07; L 1955, ch 155, §§ 1-6 [this compact has not yet been fully implemented; inasmuch as New York is not party to any supplementary agreement for transfer of juvenile delinquents for institutional care in another State, the Compact on Juveniles is only used for transfer (without a prior hearing) of adjudicated delinquents on probation]).

. Congress imposed its recent grant of “procedural safeguards * * * [for] parental rights pertaining to the removal of the child from the home of his parents [and] to a change in the child's placement” only if the State applies for additional (i.e., above 1979 level) foster care reimbursement under title IV-B or title IV-E of the Social Security Act (Pub L 96-272, § 101, subd [a], par [1], enacting tit IV-E; US Code, tit 42, § 675, subd [5], par [C]). That law makes no distinction, however, between placement within and without the State. Proposed implementing regulations would require States applying for additional reimbursement to “develop a Statewide procedure for approving out-of-State placements or placements beyond a specified distance from the child’s home” (45 CFR 1357.30 [d] [2] [i] ; 45 Fed Reg 86815 [Dec. 31, 1980]) to give prior written notice to the parents and oral notice to the child (except in an emergency) of any plans to remove a child from the home or to change a placement (45 CFR 1357.30 [d] [6] [i] [A]-[B], [ii] [A]-[C], [E] ; 45 Fed Reg 86816) and to insure that the plans are discussed with the parent and any objections reviewed (45 CFR 1357.30 [d] [6] [ii] [D] ; 45 Fed Reg 86816). These regulations, too, would apply only if the State chose to apply for title IV-E or additional title IV-B funds. As of the date’ of the submission of the Attorney-General’s brief, New York had not determined whether to apply for funds under Public Law 96-272.