■ In the Matter of the M. CHILDREN. CHARLES W. BATES, as Westchester County Commissioner of Social Services, Respondent; LINDA M., Appellant. — In child protective proceedings pursuant to article 10 of the Family Court Act instituted by the Commissioner of Social Services of the County of Westchester, the mother of the allegedly abused and neglected children appeals from an order of the Family Court, Westchester County (Palella, J.), entered June 12, 1981, which, after hearings, and upon a finding of neglect, awarded custody of the children to their great aunt. Order affirmed, without costs or disbursements. Appellant has four minor children, Harold, born on July 5, 1973; Veronica, born on September 23, 1974; Katherine, born on December 29, 1975; and Arthur, born on June 2, 1977. At the time the investigation herein was commenced, the children resided with appellant and her paramour, Melvin Kent. The children were left alone at times and were repeatedly, systematically and seriously beaten. Appellant claimed that the children were beaten as punishment and in furtherance of their religious upbringing. In view of the appellant's admissions in this regard before the Family Court, we have little difficulty affirming both the finding of neglect and the award of custody to the great aunt of the children. Indeed, from what may be gleaned from the record before us the great aunt is a decent, caring woman who is offering the children comfort, safety and satisfactory care and supervision, as opposed to the atmosphere permeated with fear and anguish offered by their mother. Appellant urges that her right to beat her children is protected by subdivision 1 of section 35.10 of the Penal Law which permits a parent to use physical force in dealing with his or her infant children if he or she "reasonably believes it necessary to maintain discipline or to promote the welfare of such person" and by the First Amendment to the United States Constitution which guarantees all persons freedom to practice their religion. Appellant attempts to excuse the beatings given to the children by reason of the fact that she was herself an abused child. She also claims, that although "[i]n the eyes of the court [she] may have been an unfit person because of what the court indicated was a psychological impairment, significant mental disorders and religious fanaticism", "[m]any people are paronoid [*sic*] in today's society and still function." Appellant's counsel has suggested to us that this case presents "a problem of cultural diversity", which serves to explain away the findings in a psychiatric

report rendered to the Family Court after appellant and her paramour were examined. Counsel further argues that : "Any white psychiatrist may very often find most black men and women 'paranoid.' This is most often because they come from different cultures and the psychiatrist is unable to culturally empathize with the black patient and the experience inherent in being black in America today. Therefore perfect fully [*sic*] normal behavior in black culture may be perceived as an emotional disorder or paranoia by the psychiatrist from a different culture." We find these arguments most disconcerting, especially in the instant case where the appellant admits that she has mistreated her children and has categorically refused to seek help or to change her ways in any manner. The standards applied in this case by the psychiatrist who examined the appellant and her paramour, by the Family Court and by this court, are those standards which apply to our society in general and to the treatment which, as human beings, all parents must accord to their children. As *parens patriae,* this court must require that such uniform humane standards concerning the care and treatment of children are applied in every case, including the one at bar. Clearly, subdivision 1 of section 35.10 of the Penal Law, relied upon by appellant, was in no way intended to permit the cruel beating of children, nor were the freedoms guaranteed to us by the First Amendment intended to embrace such behavior in the name of religion. Accordingly, we agree that under the circumstances of this case, the children must be removed from the home and custody of their mother. Mollen, P. J., Titone, Weinstein and Rubin, JJ., concur.