OPINION OF THE COURT
Cosmo Di Tucci, J.
This is an action for a judgment declaring that section 29.11 of the Mental Hygiene Law and 14 NYCRR 517.4, which permit the transfer of involuntarily committed mentally ill *594 patients from an acute-care facility to a long-term facility, over objection, and without a prior judicial hearing as to the need for such transfer, are violative of mentally ill patients’ right to due process of law under the New York State and United States Constitutions. Plaintiffs further move for a permanent injunction prohibiting defendants from transferring any objecting patient to a long-term facility without a prior court hearing. Defendants cross-move to dismiss the complaint for failure to state a cause of action and, by affidavit, on the further ground of mootness. By separate notice of motion, plaintiffs move for leave for plaintiff Wanda Owens to intervene and for class certification. By separate notice of motion, plaintiffs move for a preliminary injunction.
Although defendants move to dismiss for failure to state a cause of action, the parties have agreed to have this action decided on the merits. The court will, therefore, proceed accordingly.
Plaintiff Savastano is the Director of the Mental Hygiene Legal Service, an agency authorized pursuant to article 47 of the Mental Hygiene Law to advocate for and protect the rights of institutionalized, mentally ill patients. Plaintiffs Nabriet, Cornwall and Fuentes, at the commencement of this litigation, were patients involuntarily retained in the psychiatric ward of Queens Hospital Center (hereinafter QHC), an acute-care municipal facility under the auspices of the Health and Hospitals Corporation, whom defendants sought to transfer, over objection, pursuant to section 29.11 of the Mental Hygiene Law, to Creedmoor Psychiatric Center, a long-term facility (hereinafter Creedmoor) operated by the New York State Office of Mental Health (hereinafter OMH). The three patients have since been released.
Defendant Dr. George Nürnberg is the director of psychiatry at QHC and has the ultimate responsibility for the decision to transfer an objecting patient to Creedmoor. Defendant Dr. Steven Katz is the Commissioner of Mental Health of New York State and has the ultimate responsibility for promulgating rules and regulations governing the implementation of the Mental Hygiene Law pursuant to statutory authority.
In 1984, subdivision (i) was added to section 29.11 of the Mental Hygiene Law. Said subdivision provides: "If at the time the commissioner orders the transfer of an involuntary patient from a hospital to a hospital operated by the state, there is pending a request for a hearing or a decision by a *595 court on the question of need for involuntary care and treatment, the commissioner may either (i) stay his order of transfer until completion of the hearing, or (ii) direct the transfer to take place and the director of the state facility shall be substituted in all legal proceedings regarding continued retention of the patient.” Thus, it is clear, and plaintiffs do not maintain otherwise, that pursuant to this subdivision an involuntarily committed patient may be transferred to a State facility for intermediate or long-term care before a judicial hearing is held on the issue of the involuntary commitment. It is this section and the following rules that are at issue in this proceeding.
On October 10, 1986 the Commissioner, pursuant to the authority vested in him by subdivision (a) of section 29.11 of the Mental Hygiene Law, promulgated new rules embodied in 14 NYCRR part 517. The rules applicable to a resolution of the dispute herein provide:
"517.4 Transfer by order, (a) Who may apply for order. Application for an order of transfer for a patient may be made by the patient, by a significant other or guardian of the patient, or by the sending hospital’s director or the designee thereof.
"(b) Content of application. (1) Written application for an order of transfer should be made on Forms A and B in subdivisions (k)-(l) of this section. Such application shall include the following:
"(i) the reasons for the application, indicating how the patient is expected to benefit from the transfer;
"(ii) the name and address of the applicant and the applicant’s relationship to the patient;
"(iii) the name of the hospital where the patient currently resides and the name of the hospital to which transfer is proposed;
"(iv) the age of the patient;
"(v) the admission status of the patient;
"(vi) the written consent of the patient (or the patient’s parent or guardian, if appropriate) or a summary of the appeal procedure and result (see paragraph [c] [3] of this section); and
"(vii) the written consent of the receiving hospital, if application is not being made directly to the receiving hospital.
"(2) If the sending hospital’s director or the designee thereof *596 is the applicant, the application should additionally include the following material:
"(i) a summary of the patient’s clinical record to date;
"(ii) the results of all pertinent physical and laboratory examinations; and
"(iii) all pertinent legal documents * * *
"(3) Involuntary patients. An order of transfer may be requested for any involuntary patient. The proposed transfer shall first be discussed with the patient. No request for the transfer of an objecting patient shall be made by the sending hospital until such patient has been given an opportunity to appeal such request to the sending hospital’s director.
"(i) Appeal. The director of the sending hospital may delegate to the clinical director the authority to hear an appeal. The patient may elect to have a person represent him or her. The appeal may be conducted informally, without adhering to rules of evidence and recordkeeping. The director or clinical director shall:
"(a) review the patient’s clinical history;
"(b) give the patient, the Mental Hygiene Legal Service and any patient representative an opportunity to discuss the patient’s objections to the transfer with the director or clinical director; and
"(c) consider the criteria for transfer described in subdivision (d) of this section and determine whether, on balance, the patient’s best interests would be served by transfer to another hospital.
"(ii) Upon completion of the appeal, the director or clinical director shall inform the patient, the MHLS and any patient representative of the results. If the patient is still to be transferred, the director or the designee thereof may request an order of transfer and shall inform the patient, the MHLS and any patient representative of the anticipated date of transfer, when known.
"(d) Criteria for transfer. (1) Suitability of the hospital. Transfer of a patient between hospitals shall be authorized when it is determined to be in the best interests of the patient. In making the determination of which hospital better serves the best interests of the patient, the following factors shall be considered:
"(i) The patient’s need for continued inpatient treatment.
"(ii) The patient’s need for services which are more readily *597 available or which can be more effectively provided at the receiving hospital.
"(iii) Proximity of the sending and receiving hospitals to the patient’s significant others.
. "(iv) The ability of the sending hospital to provide adequate overall treatment of the patient, as affected by:
"(a) overcrowding;
"(b) reduction or elimination of services beneficial to the patient; and
"(c) reduction in the number of approved beds.
"(v) The ability of the receiving hospital to provide adequate overall treatment of the patient, as affected by:
"(a) overcrowding;
"(b) the availability of services beneficial to the patient; and "(c) bed capacity.
"(2) Suitability of the patient, (i) The patient must meet the psychiatric admissions criteria of the receiving hospital.
"(ii) In addition to satisfying subparagraph (i) of this paragraph, a patient to be transferred from a municipal or general hospital in New York City to a hospital operated by the Office of Mental Health must satisfy the following requirements, unless waived by the commissioner or a designee thereof:
"(a) the patient must not require acute psychiatric care; and "(b) the patient must require, or be expected to require in the future, intermediate or long-term psychiatric care.
"(iii) The patient must be medically cleared.
"(e) Who may issue order. (1) An order of transfer may be issued by the Commissioner of Mental Health. The commissioner has also delegated this authority to the Deputy Commissioner for Operations and to each regional director, or in the absence of such regional director to the deputy regional director or other duly authorized substitute. The commissioner may further delegate this authority to the director, or in the absence of such director to the duly authorized acting director, of any hospital operated by the Office of Mental Health, subject to paragraph (3) of this subdivision. Such order shall be issued on Form 19 OMH 'Order of Transfer,’ revised and contained in subdivision (m) of this section. Application for transfer to a hospital operated by OMH should be made to that hospital’s director.
"(2) The regional director for the receiving hospital shall *598 have the authority to resolve any disagreement between the hospital directors regarding the appropriateness of issuing an order of transfer for a patient * * *
"(f) Notice of transfer. Except as provided in paragraph (h) (1) of this section, the sending hospital shall give three days or more prior written notice of transfer to the following parties: "(1) the nearest relative of the patient, other than the applicant for the patient’s transfer;
"(2) additional significant others who the patient has indicated should receive notice of the patient’s hospitalization and status;
"(3) the patient’s guardian, if any, if such guardian has not been previously notified and is not included under paragraph (1) or (2) of this subdivision; and
"(4) the Mental Hygiene Legal Service.
"(g) Process for transfer. Transfer of a patient should cause the least possible disruption in the patient’s daily living routine. The sending and receiving hospitals shall cooperate in arranging a process for transfer which accomplishes this objective. This process may be initiated in the following ways * * *
"(ii) The sending hospital shall provide an opportunity to the receiving hospital to examine the patient prior to admission, unless such examination is waived by the receiving hospital. The examination may be conducted prior to submission of the written application for transfer. In the absence of an agreement applicable to both hospitals which provides for examination of the patient at the receiving hospital, the receiving hospital shall send a screening team to the sending hospital to directly interview the patient and meet with members of staff familiar with the patient. At the time of this screening, the sending hospital should provide copies of any material described in paragraph (b) (2) of this section which have not already been provided to the receiving hospital * * * "(h) Exceptions to process for transfer. Where inconsistent with the foregoing provisions of this section, the following paragraphs shall control * * *
"(2) Transfer of an involuntary patient whose court hearing on continued retention is pending.
"(i) (a) The commissioner or a designee thereof may order the transfer of such patient to a hospital operated by the Office of Mental Health and such hospital’s director shall be *599 substituted for the sending hospital’s director in the hearing if the commissioner or designee determines that immediate transfer would be in the best interests of the patient.”
Plaintiffs allege that pursuant to section 29.11 (a) and (i) of the Mental Hygiene Law and 14 NYCRR 517.4, on October 17, 1986, an order of transfer was signed directing that the three patient plaintiffs be transferred to Creedmoor over objection. Plaintiffs commenced this action on the ground that final factual and legal determinations as to the need for such transfer should be delegated to the court for determination prior to transfer. The patient plaintiffs were not arguing their status as involuntarily committed patients nor did they request a hearing to contest that status.
In support of the action, plaintiffs maintain that patients are stigmatized by the transfer from an acute-care psychiatric facility to a State psychiatric facility as it implies chronic mental illness and, therefore, liberty interests protected by the Due Process Clauses of the US and NY Constitutions are affected; that patients have an expectation that they will remain at the psychiatric facility to which they are first admitted; that the quality of care is superior at an acute-care facility; that continuity of care would be affected if it were determined that involuntary commitment was not necessary; that the remedy of retransfer is not available, and the appeal procedure provided in 14 NYCRR 517.4 for an objecting patient is without substance.
In opposition to the above, defendants contend that the new regulations were enacted to permit expeditious transfers to alleviate overcrowding at the acute-care facility and to place patients in need of intermediate or long-term care in a facility where their needs would best be satisfied. Defendants further maintain that there is no constitutional right to be treated at a particular facility; that patients are not stigmatized by the transfer; that their liberty interests protected by due process are not affected and, even if said patients are so affected, the procedures adopted satisfy due process requirements.
At the outset, the court notes that the three patient plaintiffs no longer reside in QHC and were released without transfer to Creedmoor. However, this action should not be dismissed on the ground of mootness since significant constitutional issues are raised. The challenged statute and regulations not only affected the three patient plaintiffs in this proceeding but potentially could affect other members of the *600 public; the issues raised have not been previously passed on and the remaining plaintiff, the Director of the Mental Hygiene Legal Service, will vigorously litigate the issues. (United States v Concentrated Phosphate Export Assn., 393 US 199; Division 580, Amalgamated Tr. Union v Central N. Y. Regional Transp. Auth., 578 F2d 29; Matter of Hearst Corp. v Clyne, 50 NY2d 707; Matter of Amato v Ward, 41 NY2d 469; Ughetto v Acrish, 130 Misc 2d 74; Matter of Kline & Son v Fallows, 124 Misc 2d 701.)
With respect to that part of plaintiffs’ motion for class certification, class action status is inappropriate where governmental operations are involved and subsequent plaintiffs will be adequately protected under the principle of stare decisis regardless of whether they are made plaintiffs in the action through the vehicle of a class action. (Matter of Martin v Lavine, 39 NY2d 72; Gandolfi v City of Yonkers, 101 AD2d 188, affd 62 NY2d 995; Terry v Town of Huntington, 101 AD2d 833; Oak Beach v Town of Babylon, 100 AD2d 930.)
With respect to that part of the motion for leave to add as a party plaintiff Wanda Owens, an involuntarily committed patient at QHC whom QHC is also seeking to transfer to Creedmoor, while it is unnecessary since the court is not dismissing the action on the ground of mootness, said plaintiff certainly has an interest in the outcome of this action. (CPLR 1013.) However, since she has since also been released, this request is now moot.
The 14th Amendment of the US Constitution and article I, section 6 of the NY Constitution prohibit the deprivation of life, liberty or property without due process of law. Although New York State in certain instances has chosen to extend constitutional protections beyond the minimum standards set by the Federal Constitution (People v P. J. Video, 68 NY2d 296; Cooper v Morin, 49 NY2d 69), the interpretation of the Due Process Clause of the US Constitution pertaining to the issues involved herein are equally applicable to the Due Process Clause of the NY Constitution. (Cooper v Morin, 49 NY2d 69, supra; Sinhogar v Parry, 74 AD2d 204, mod 53 NY2d 424.)
An involuntarily confined mentally ill patient in a municipal or State mental health facility does not forfeit all constitutional protections by reason of the commitment. (Mental Hygiene Law § 33.01.) He or she retains a variety of important rights that the courts must be alert to protect. Clearly, an *601 involuntary commitment which involves a massive curtailment of liberty (see, Humphrey v Cady, 405 US 504; Lombard v Board of Educ., 502 F2d 631) mandates that issues regarding commitment procedures be judicially reviewed. (See, Vitek v Jones, 445 US 480, 494 ["(t)he stigmatizing consequences of a transfer to a mental hospital for involuntary psychiatric treatment * * * constitute the kind of deprivations of liberty that requires procedural protections”].)
Article 9 of the Mental Hygiene Law, which scheme has been found to be facially constitutional as it existed in 1982 (see, Project Release v Prevost, 551 F Supp 1298, affd 722 F2d 960), affords a judicial hearing to an involuntarily committed patient challenging the commitment. "By State regulation, no objectionable nonemergency treatment may be administered prior to review by a neutral medical fact-finder, with possible appeal. Counsel may be present to ensure the representation of a patient’s interests.” (Project Release v Prevost, supra, at 1309.) Under the challenged regulations, that procedure has not changed. Here, the three patient plaintiffs were not challenging their status as involuntarily committed patients. What is being challenged is the transfer itself without a prior judicial hearing.
We hold that due process protections attach to the decision to transfer since the transfer represents a major change in the condition and duration of confinement and is normally imposed only when it is determined that an individual is in need of intermediate or long-term confinement. (Rennie v Klein, 653 F2d 836; Rogers v Okin, 634 F2d 650.) We do not agree with the cases cited by defendants which hold that a transfer does not implicate due process protections. The cited cases all dealt with the transfer of prisoners and the considerations underlying our penal system are vastly different from those regarding our responsibility, care and concern for the mentally ill. (Meachum v Fano, 427 US 215; Montanye v Haymes, 427 US 236; Matter of Allegretti v Coughlin, 81 AD2d 958.)
Accordingly, a judicial hearing must be held prior to the transfer, if it is determined that such is required, in order to protect the patient’s interests.
What process is due when a liberty interest is implicated requires a consideration and balancing of three factors: (1) the private interest that will be affected, (2) the risk of an erroneous deprivation of such interest through the procedures employed and the probable value, if any, of additional procedural *602 safeguards, and (3) the governmental interest, including the fiscal and administrative burdens that the additional procedural requirements would entail. (Mathews v Eldridge, 424 US 319; Rennie v Klein, 653 F2d 836, supra; Cruz v Ward, 558 F2d 658; Boarding Home Advocacy Team v OBannon, 525 F Supp 1181; Rivers v Katz, 67 NY2d 485; LaRossa, Axenfeld & Mitchell v Abrams, 621 NY2d 583.)
Under these criteria, the court finds that the procedures established by the Commissioner do not satisfy due process. With respect to the private interest involved, while there is no constitutional right to remain at any particular facility (Sinhogar v Parry, 74 AD2d 204, mod 53 NY2d 424, supra), a transfer to a State facility with all of its connotations must be accomplished pursuant to procedures which meet minimum constitutional due process standards.
Secondly, the procedures employed do not adequately comply with due process. A patient for whom a transfer is sought is given notice, the right to object and a hearing is held with an attorney present. This procedure is recognized by both the Legislature which enacted the statute and the Commissioner who promulgated the rules and regulations for the conduct of the hearing. It is significant to note that the application for an order of transfer may be made by "the patient, by a significant other or guardian of the patient, or by the sending hospital’s director”. (14 NYCRR 517.4 [a].) The patient is afforded a right of appeal should the decision be adverse. Such appeal is to be taken "to the sending hospital’s director”. (14 NYCRR 517.4 [c] [3].) It is with these same rules and regulations that this court takes issue.
Under the regulations being challenged, a patient is subjected to protracted evaluation, observation and treatment by many different levels of psychiatric specialists at the acute-care facility and then is independently evaluated by the long-term facility, all to insure that the patient sought to be transferred is in need of intermediate or long-term treatment. By their status as involuntary patients, they have already been found to be mentally ill. The issue then is to determine what is the most appropriate level of care. The transfer policies are intended to effectuate this professional judgment. (Cruz v Ward, 558 F2d 658, supra.) While respect should be paid to professional medical judgments with regard to the proper course of treatment for mentally ill patients in the care of a municipal or State facility (Killeen v State of New York, 104 AD2d 586; Matter of Berd v New York State Dept. of *603 Health, 96 Misc 2d 159), it is noted that all four patients involved in these proceedings have been released prior to any transfer and within a very short period of time after it was determined, under current procedures, that transfer for longterm care was necessary.
Thirdly, while we are fully cognizant that a strong presumption of validity attaches to legislative enactments and the rules and regulations enacted by administrative agencies in furtherance of their statutory mandate (Nettleton Co. v Diamond, 27 NY2d 182) and that courts should be very hesitant to strike down as unconstitutional such laws, rules and regulations (Marcus Assocs. v Town of Huntington, 45 NY2d 501; Lighthouse Shores v Town of Islip, 41 NY2d 7), the case for judicial review prior to transfer between facilities of a patient who is objecting is clearly warranted in view of all of the reasons hereinbefore set forth. The mere fact that the transfer might be motivated by the desire or necessity to alleviate overcrowding to meet the demand for in-patient treatment in acute-care psychiatric facilities is a conflict which prevents the director of the transferring facility from deciding the issues in an unbiased and impartial manner. Under present rules, this same director may apply for an order of transfer (14 NYCRR 517.4 [a]) and thereafter may be called upon to review his own decision should objection be raised. (14 NYCRR 517.4 [c] [3].) In this regard, it is important to note that the rules provide that "[t]he patient may elect to have a person represent him or her” and that there was strong comment at the hearing in this matter that while attorneys for the patient are allowed to be present at the hearing, they are not permitted to say anything. (14 NYCRR 517.4 [c] [3] [i].)
Under these rules as presently constituted, there is no question that sufficient conflicts exist which would violate the due process provisions of both the United States and New York State Constitutions. This court is aware of the shortage of acute beds and the pressures on the skilled personnel who care for the acutely ill. However, we agree with plaintiffs’ contention that expediency, efficiency and costs in terms of time and effort are not paramount governmental interests where due process protections are involved. (See, Fuentes v Shevin, 407 US 67.) While it appears that the aim of the challenged statute and regulations is to utilize the limited resources for treatment of the mentally ill in the most expeditious manner so that treatment in an acute-care facility is limited to those individuals who will most benefit, we cannot *604 permit due process rights of the patient to be sacrificed for the interests of others.
Accordingly, plaintiffs’ motion for leave to intervene is denied as moot. Plaintiffs’ motion for class certification is denied. Plaintiffs’ motion for a preliminary injunction is denied since it has been rendered moot by the release from hospitalization, prior to this decision, of all of the patients involved in this proceeding. Defendants’ motion to dismiss on the ground of mootness is denied.
The court hereby declares that section 29.11 of the Mental Hygiene Law and 14 NYCRR 517.4 are unconstitutional in that the procedures as hereinbefore discussed violate the due process rights of the patients involved and the provisions of the United States and New York State Constitutions as hereinbefore set forth.