OPINION OF THE COURT
Philip C. Segal, J.
At issue in this adoption proceeding is whether the newly enacted New York State Adoption and Safe Families Act (L 1999, ch 7 [ASFA]) requires this court summarily to deny the pending petitions and immediately sever an intact family by removing petitioner’s four nieces from her home, where they have lived together for seven years, because 21 years ago she pleaded guilty to manslaughter and served three years’ probation for recklessly killing her abusive paramour.
The relevant provisions of ASFA, which took effect on February 11, 1999, and expand Social Services Law § 378-a, require the court to deny pending adoption petitions and immediately remove children from a foster or preadoptive home whenever a petitioner has been convicted of specified criminal offenses, including homicide.[1] Notwithstanding Social Services Law § 378-a, petitioner and the Law Guardian contend that the court should grant the petitions on the grounds that the statute on its face and as applied violates the Federal and State Constitutions and finalizing these adoptions would be in the children’s best interest. For the following reasons, the court agrees.[2]
*824 I.
Petitioner, Gwendolyn Grant,[3] is a 53-year-old dental assistant who has held the same job for the past 16 years. The eldest of six children, she was born and raised in Brooklyn, where she singlehandedly raised two sons, Eric, age 33, and Darrell, age 32. Petitioner also raised a close friend’s grandchildren, Wynona and Alexander Duke, ages 23 and 22, respectively, and obtained legal guardianship of them when her friend was diagnosed with cancer.
Eight years ago, petitioner’s sister, Sandra Grant Wilson, was abusing drugs and unable to care for her four daughters: Jonee, born March 28, 1984; Candice, born March 31, 1985; Natasha, born January 26, 1989; and Deandra, born July 2, 1990. The children were briefly placed by Family Court with their maternal grandmother, Ruth Grant, who required triple bypass surgery in July 1991. At that time, petitioner, who already had a long-standing relationship with the girls, was certified as their kinship foster parent and has raised them in her home continuously since then. Petitioner fully disclosed her criminal history when she applied for certification as a kinship foster parent. She has been recertified by a foster care agency on an annual basis ever since.
Sandra Wilson, the girls’ mother, has been incarcerated twice during their lifetime and has visited the children only sporadically. James Wilson, the girls’ father, resides in Pennsylvania and has visited his daughters periodically over the years. On March 10, 1997, both Sandra and James Wilson executed conditional judicial surrenders (see, Social Services Law § 383-c), which provide that their four daughters may be adopted only by petitioner.
Gwendolyn Grant filed four petitions, verified on September 23, 1998, seeking to adopt each of her four nieces. Among the documents she filed with the court was an affidavit of criminal history, explaining her 1978 conviction by guilty plea of manslaughter in the second degree. Her affidavit and the record in the present proceeding disclose that in December 1977, she defended herself during a violent struggle in the kitchen with her abusive live-in paramour (about whom she had repeatedly complained to the 69th Precinct). Intoxicated, he punched the back of her head and then repeatedly banged her forehead into *825 the kitchen cabinets. When he grabbed her throat and began choking her, she took hold of a carving knife from the kitchen counter. He lunged at petitioner and, fearing for her life, she stabbed him in the chest. On March 9, 1978, petitioner was sentenced to five years’ probation. She completed her probation in three years (see, Penal Law § 65.10 [2] [h]; GPL 410.90 [1]) and was granted a certificate of relief from disabilities (see, Correction Law § 701) by Kings County Supreme Court.
By order entered on December 16, 1998, the court directed petitioner and her four nieces to undergo a forensic assessment by Larry A. Cohen, Ph D, a well-known and highly qualified clinical psychologist. That order stemmed from the court’s desire for further information about petitioner’s criminal history and to address any issues of related psychological stability. The forensic report unequivocally recommends that the adoptions be granted and that petitioner and her four nieces not be separated from one another. The report further states: “After spending substantial time with the children and [petitioner], it is my strong impression that [petitioner] poses no risk to the children based on her past conviction.”
Likewise, the adoption home study submitted on June 24, 1998, by Angel Guardian Home, an authorized agency supervising the children’s foster care, recommends that the adoptions be granted. The home study was conducted by Paulette Kee, C.S.W., and states: “Ms. [Grant] has demonstrated a strong and loving commitment to her family, especially to her nieces, Jonee, Candice, Natasha and Deandra. It appears that a positive relationship is experienced by their entire family. There is a deep bond among this family, and Ms. [Grant] desires to keep them all together [permanently through adoption].”
Finally, the Juvenile Rights Division of the Legal Aid Society, the children’s Law Guardian, assigned Gayle Samuels, C.S.W., to conduct an independent psychosocial assessment of this adoptive family. Gayle Samuels reports: “Ms. [Grant] is aware of the children’s individual needs and is able to describe each child’s strengths and weaknesses. While each child knows Ms. [Grant] is her maternal aunt, each identifies Ms. [Grant] as a loving parent. They consider Ms. [Grant]’s home to be their home and view themselves and their aunt as a family unit.”
By order entered on May 13, 1999, the court (i) scheduled a conference, requested by Angel Guardian Home, to address the agency’s obligations pursuant to ASFA and (ii) directed that “the children not be removed from petitioner’s home absent a *826 court order in this proceeding.” During the conference, petitioner and the Law Guardian challenged the constitutionality of ASFA’s requirement that the adoption petitions be dismissed and the children removed from petitioner’s home solely because of her 1978 conviction (Social Services Law § 378-a [2] [e] [1] [A] [iv]; [2] [h]). The court directed the parties to submit memoranda of law on whether said provision of ASFA is constitutional on its face and as applied in this proceeding. Angel Guardian Home advised the court that it was taking no position with regard to the constitutional issues raised. Pursuant to CPLR 1012 (b), the court served notice on the New York State Attorney General. By letter dated July 20, 1999, the Attorney General declined to intervene in defense of the statute.
In their memoranda of law, petitioner and the Law Guardian specifically contend that the statutory mandates are unconstitutional because ASFA creates an irrebuttable presumption that petitioner is unfit and because the children are denied an “individualized determination” as to whether their continued residence with, and adoption by, petitioner is in their best interests. According to petitioner and the Law Guardian, the statute violates substantial liberty interests by requiring a procedure that lacks the basic elements of procedural due process.
II.
In determining whether the mandates of due process apply in this proceeding, the court must first determine if constitutionally recognized liberty interests exist. Here, there are two such interests: (i) the right of all members of an intact, biological, extended family to continue residing as a family unit; and (ii) the right of all children in foster care to be free of arbitrary State action affecting their welfare and custody.
Petitioner and the children each have a liberty interest in preserving the integrity of their family relationship. The United States Supreme Court, which has long recognized a fundamental liberty interest in parent-child relationships,[4] has unequivocally recognized a liberty interest in the integrity of *827 an intact, biological, extended family. This principle was established in Moore v City of E. Cleveland (431 US 494 [1977]), when the Supreme Court struck down a housing ordinance that prohibited a grandmother from continuing to live with her two nonsibling grandsons. The Court held that the grandmother had a liberty interest in her custodial relationship with her grandsons and that the ordinance, which effectively redefined “family” for housing purposes (nuclear family and one grandchild), improperly infringed upon that interest. (See also, Prince v Massachusetts, supra [custodial relationship between maternal aunt and her niece constitutes a “family” for purposes of due process inquiry]; Pierce v Society of Sisters, 268 US 510, 534-535 [1925] [recognizing the constitutionally protected “liberty of * * * guardians to direct the upbringing and education of children under their control”].)
As Justice Powell emphasized in Moore (supra, at 504-505): “Ours is by no means a tradition limited to respect for the bonds uniting the members of the nuclear family * * * Even if conditions of modern society have brought about a decline in extended family households, they have not erased the accumulated wisdom of civilization, gained over the centuries and honored throughout our history, that supports a larger conception of the family * * * Especially in times of adversity, such as the death of a spouse or economic need, the broader family has tended to come together for mutual sustenance and to maintain or rebuild a secure home life.”
As noted previously, when Sandra Wilson became incapable of caring for her four daughters in 1991, it was briefly her mother, and then petitioner (her sister), who reached out to create a safe and stable home life for their grandchildren and nieces. These children have been nurtured and reared almost exclusively by members of their extended family. As Justice Brennan stated in his concurring opinion in Moore (supra, at 511), the Supreme Court “recognizes today * * * that the choice of the ‘extended family pattern is within the ‘freedom of personal choice in matters of * * * family life (that) is one of the liberties protected by the Due Process Clause’ ”. (Quoting Cleveland Bd. of Educ. v LaFleur, 414 US 632, 639 [1974].)
Following Moore (supra), other courts have found that members of the extended family possess constitutionally protected liberty interests. (See, Rivera v Marcus, 696 F2d *828 1016, 1025 [2d Cir 1982] [“custodial relatives * * * are entitled to due process protections when the state decides to remove a dependent relative from the family environment”]; Harley v City of New York, 36 F Supp 2d 136, 139 [ED NY 1999] [“(c)hildren of custodial relatives * * * possess a liberty interest in preserving the stability of their family, and * * * are entitled to due process protections when the State decides to remove them from the family environment”].) In light of the foregoing, petitioner and each of her nieces individually possess a liberty interest under both the State and Federal Constitutions in maintaining the integrity and stability of their family.
In addition, all children in foster care, including petitioner’s nieces, have a constitutionally protected right to be free of arbitrary State decisions that have a significant impact on their custody and welfare. Such children, already removed from their own homes and placed with certified relatives or strangers, need a sense of stability and trust in the soundness and security of their foster care placements. Having already suffered the trauma of losing their families, such children are constitutionally entitled to protection from arbitrary State action that could indiscriminately force them to lose yet another family relationship. (See, Moore v City of E. Cleveland, supra, at 502 [the liberty guaranteed by the Due Process Clause “ ‘includes a freedom from all substantial arbitrary impositions and purposeless restraints [by the State]’ ” (quoting Poe v Ullman, 367 US 497, 543 [1961] [Harlan, J., dissenting])]; Sinhogar v Parry, 53 NY2d 424, 444 [1981] [Fuchsberg, J., dissenting in part] [foster children are constitutionally entitled to “expect beneficial and nonarbitrary treatment at * * * (the) hands (of the State)”].)
III.
The irrebuttable statutory presumption in ASFA that (i) petitioner is unfit to raise her nieces and (ii) the children’s best interests require their removal from the only stable home they have ever known fails to satisfy the due process requirements of the State and Federal Constitutions. A homicide conviction may, and usually does, render a child’s custodian unfit; but that fact is beside the point. It is the inability ever to prove otherwise under ASFA that renders the statute unconstitutional. Here, all the evidence — including a series of comprehensive forensic and investigative assessments by highly qualified experts — demonstrates that petitioner has provided nothing *829 less than excellent care for the children throughout the years and that an intact family exists. In these circumstances, petitioner’s conviction cannot be dispositive. Indeed, the conviction proves again that “[t]he only absolute in the law governing custody of children is that there are no absolutes.” (Friederwitzer v Friederwitzer, 55 NY2d 89, 93 [1982].)
There is no overriding State interest for a “one size fits all” procedure that compels an outcome so obviously damaging to the children’s interests. ASFA’s stated purpose is to “preserve the health and safety of children in foster care and to expeditiously transition such children into suitable permanent homes.” (Governor’s Mem approving L 1999, ch 7, 1999 McKinney’s Session Law News of NY, at A-15.) Contrary to that purpose, the procedure mandated by ASFA actually “hinder [s] attainment of the * * * objectives [the statute is] designed to promote.” (Cleveland Bd. of Educ. v LaFleur, 414 US, supra, at 643.)
The United States Supreme Court has long recognized that “permanent irrebuttable presumptions [are] disfavored under the Due Process Clause[]” (Vlandis v Kline, 412 US 441, 446 [1973]). Due process is violated “when that presumption is not necessarily or universally true in fact, and when the State has reasonable alternative means of making the crucial determination.” (Supra, at 452.) Instead, the “Due Process Clause require [s] a more individualized determination.” (Cleveland Bd. of Educ. v LaFleur, supra, at 645.) The Family Court can readily provide the individualized determination that due process requires in this case to protect the liberty interests of petitioner and her nieces. Absent such an individualized determination, petitioner’s nieces and thousands of other children in State-supervised foster care are subject to an arbitrary procedure that leaves their fate to happenstance. Both the law and the courts owe them more.
IV.
Given that Social Services Law § 378-a (2) (e) (1) and (2) (h) cannot constitutionally be applied, and based upon the unequivocal evidence in this case, the court determines that the children’s best interests require that the adoption petitions be granted. (Domestic Relations Law § 114 [1].) Accordingly, the Adoption Clerk is directed to calendar the petitions for finalization forthwith.

. Social Services Law § 378-a (2) (e) (1) reads in relevant part:
“Notwithstanding any other provision of law to the contrary, an application for certification or approval of a prospective foster parent or prospective adoptive parent shall be denied where a criminal history record of the prospective foster parent or prospective adoptive parent reveals a conviction for:
“(A) a felony conviction at any time involving: (i) child abuse or neglect; (ii) spousal abuse; (iii) a crime against a child, including child pornography; or (iv) a crime involving violence, including rape, sexual assault, or homicide, other than a crime involving physical assault or battery”.
Social Services Law § 378-a (2) (h) reads in relevant part: “Whenever a criminal history record of the foster parent or prospective adoptive parent reveals a conviction for one of the crimes set forth in subparagraph one of paragraph (e) of this subdivision, such authorized agency shall remove any foster child or foster children from the home of the foster parent or prospective adoptive parent.”

. This case is decided upon both Federal and separate, independent State constitutional grounds. Federal authorities are cited in support of the *824 State grounds for the “purpose of guidance” only. (Michigan v Long, 463 US 1032, 1041 [1983].)

. Names are fictitious for the purpose of publication.

. E.g., Santosky v Kramer, 455 US 745 (1982) (parents have a fundamental right to care and custody of their children); Wisconsin v Yoder, 406 US 205 (1972) (upholding the constitutional right of parents to assume the primary role in child-rearing decisions); Stanley v Illinois, 405 US 645 (1972) (parents’ rights to the custody and companionship of their children are constitutionally protected); Prince v Massachusetts, 321 US 158, 166 (1944) (acknowledging a “private realm of family life which the state cannot enter”). The New York Court of Appeals has come to the same conclusion as a matter *827 of State law. E.g., Matter of Ella B., 30 NY2d 352, 356 (1972) (“A parent’s concern for the liberty of the child, as well as for his care and control * * * [is a] fundamental * * * interest and right”).