OPINION OF THE COURT
Allen Albert, J.
Before the court is the petition filed by Cheryl and Derrick Adamson to adopt the subject child, Abel.[1] Abel was born on August 9, 2004. Since September 22, 2004 when Abel was discharged from the hospital, on the basis of a petition that had been filed alleging that his biological mother had neglected him, Abel has resided in the home of his maternal cousin, Cheryl Adamson, and her husband, Derrick Adamson.[2]
The adoption home study prepared by Patricia Casey, a social worker employed by New York Foundling, the foster care agency that has care and custody of Abel, describes Abel as a healthy seven-year-old boy with no special needs who is developing age-appropriately, and who is beginning regular second grade classes. The home study also reflects the fact that Mr. and Mrs. Adamson have been married for over 13 years and that they are both employed: Mrs. Adamson as a nursing assistant, and Mr. Adamson as the head supervisor of the custodial department at Farmingdale State College. Also residing in the home is the Adamsons’ 15-year-old biological son, Seth. Casey describes Seth as healthy, doing well in school, and having a positive and loving relationship with Abel. The adoptive parents, Seth and Abel, reside in a three-bedroom house in Suffolk County, New York.
In recommending that this court approve the adoption of Abel, Casey writes:
*712 “Both Mr. and Mrs. Adamson have been involved in Abel’s life since he was a baby. One can see that they love this child very much and that he means the world to them. They were observed by this worker to be very attentive and affectionate toward Abel, who lovingly refers to them as ‘mommy and daddy’. They share an inseparable bond with Abel, and have a good understanding of his needs. They are providing effectively for his physical, emotional, and spiritual needs. Mr. and Mrs. Adamson understand and are willing to accept the moral and legal responsibilities of adoption. Their commitment to this child is deep rooted and they have made it clear that he knows that they are there for him. Abel feels the same strong sentiments toward this family and although too young to fully comprehend adoption, he is a happy, well-adjusted child for he knows that he is loved and wanted. Based on the overall progress this child has made in the home, it is therefore recommended that the application for adoption submitted by Derrick and Cheryl Adamson be approved and that Abel be adopted by this caring family.”
Abel’s attorney, Jennifer Smith of the Legal Aid Society, also believes that it is unequivocally in Abel’s best interest to be adopted by Mr. and Mrs. Adamson. This is based upon Casey’s report, as well as the independent investigation by Stella Kim, a social worker employed by the Legal Aid Society. On August 8, 2011, Kim visited the Adamsons’ home, interviewed separately Mr. Adamson, Mrs. Adamson, and Abel and observed their interactions. In a detailed affidavit submitted to the court, Kim depicts a stable, happy, loving family in which Abel has thrived. According to Kim, the Adamsons have provided the same financial and emotional support for Abel as they have their biological son, Seth. Kim observed the genuine bond that exists between Abel and Mr. Adamson and she noted that both Abel and the Adamsons would be devastated and traumatized if Abel were to be removed from the home of the Adamsons or if this adoption were not to be approved. Based on her investigation and professional experience, Kim concluded that the adoption of Abel by the Adamsons should “absolutely” be approved so that Abel “may continue to grow and thrive in this loving home.”
All of the above provides incontrovertible support for the proposition that it is in Abel’s best interest to be adopted by the *713 Adamsons and clearly militates in favor of this court approving the Adamsons’ petition to adopt Abel. Mr. Adamson’s criminal history, however, has created an issue as to whether there exists a statutory bar to such approval.
Pursuant to Social Services Law § 378-a (2) (a), which requires prospective foster and adoptive parents to submit their fingerprints to both the New York State Division of Criminal Justice Services and the Federal Bureau of Investigation, this court is in receipt of a letter dated July 29, 2009 in which the New York State Office of Children and Family Services (OCFS) reported that Mr. Adamson had a 1987 Washington, D.C. conviction for simple assault and a 1992 Kings County (New York State) conviction for robbery in the third degree. The July 29th letter further indicated that New York Foundling may consider the convictions in determining whether to certify or approve Mr. Adamson as a foster parent or to revoke his approval as an adoptive parent and directed the agency to perform a safety assessment of the Adamsons’ home.
On November 24, 2009, pursuant to Social Services Law § 378-a (2) (h), New York Foundling conducted a safety assessment of the conditions of the Adamson household. In that safety assessment, with respect to the robbery conviction, Mr. Adam-son stated that he had been hanging out with a group of friends when the group decided to rob a man whom they knew had been making nightly bank deposits of large sums of money. According to Mr. Adamson, upon seeing this man get out of his car, he, together with the rest of the group, ran up to the man, pushed him against a wall and told him that “this is a stickup.” Mr. Adamson and his friends then took the man’s bag which contained money, and fled.
Based on the remoteness in time of his criminal convictions and the fact that in the years since the 1992 robbery conviction, Mr. Adamson has reformed his behavior and has led a productive life, the safety assessment reported that Mr. Adamson does not pose a safety concern to Abel. The assessment concluded that because “Mr. Adamson has been the sole father figure in Abel’s life, [New York Foundling] strongly believes that it is in the best interest of the child to be adopted by Mr. and Mrs. Adamson.”[3]
In order to gain further understanding of the facts underlying *714 Mr. Adamson’s 1992 robbery conviction, this court obtained the criminal court complaint and a transcript of Mr. Adamson’s guilty plea. The criminal complaint charged Mr. Adamson with one count each of robbery in the first degree, robbery in the second degree and assault in the second degree, and alleged that on November 27, 1991, in Kings County, Mr. Adamson hit the victim with an unknown blunt object about his head and face and took a bag containing money that the victim had been carrying. The blows allegedly knocked out the victim’s front teeth, caused his nose to bleed, and resulted in his sustaining a separated shoulder. On February 3, 1992, having been promised a sentence of U/s to 4 years’ imprisonment, Mr. Adamson pleaded guilty to one count of robbery in the third degree and admitted that, on November 27, 1991, when the owner of a store came out (of the store), he hit him, caused him to fall, took his bag containing money, and fled.
Finally, this court is in receipt of a sworn affidavit from Mr. Adamson, dated June 29, 2011, in which he admits that in 1992 he robbed a store owner of a bag containing money. In the course of the robbery, Adamson admits to striking the store owner once on the jaw with his bare fist, causing him to fall to the ground. Adamson denied using a weapon during the robbery and also stated that the store owner neither appeared to be injured nor lost consciousness during the robbery. Adamson expressed remorse and stated that he accepted responsibility for this incident by pleading guilty and serving two years of imprisonment and two years on parole.
Prior to the 2008 amendment of Social Services Law § 378-a (2) (e), this court would have found that Mr. Adamson’s 1992 robbery conviction did not automatically disqualify him from adopting Abel because, quite clearly, denial of Mr. and Mrs. Adamson’s petition to adopt would have created an unreasonable risk of harm to Abel’s mental health and granting said petition would have been in Abel’s best interest and would not have placed his safety in jeopardy. However, in 2008, in order to comply with the Federal Adam Walsh Child Protection and Safety Act of 2006 (see 42 USC § 16901 et seg., as added by Pub L 109-248), New York State eliminated the language in Social Services Law § 378-a which only presumptively disqualified from becoming foster or adoptive parents those who had been convicted of certain felonies, and by doing so made automatic the disqualification of those prospective foster or adoptive *715 parents who had been convicted of certain felonies. (Compare Social Services Law § 378-a [2] [e] [1] [former (A)], with [A], as amended by L 2008, ch 623.)[4]
This court, therefore, initially must decide whether Mr. Adamson’s conviction in 1992 for robbery in the third degree falls within the category of convictions which would automatically disqualify him from adopting Abel. Social Services Law § 378-a (2) (e) (1) (A) reads, in pertinent part,
“an application for certification or approval of a prospective foster parent or prospective adoptive parent shall be denied where a criminal history record of the prospective foster parent or prospective adoptive parent reveals a conviction for:
“(A) a felony conviction at any time involving: (i) child abuse or neglect; (ii) spousal abuse; (iii) a crime against a child, including child pornography; or (iv) a crime involving violence, including rape, sexual assault, or homicide, other than a crime involving physical assault or battery.” {See also 18 NYCRR 421.27 [d] [1]; 42 USC § 671 [a] [20] [A] [i]; 45 CFR 1356.30 [b] [4].)[5]
Because robbery is not specifically mentioned in this provision, the court, therefore, must decide whether Mr. Adamson’s 1992 robbery conviction constitutes a “crime involving violence.” When the court construes the text of this statutory provision, and gives effect to the plain meaning of the words “crime involving violence,” there is little doubt that Mr. Adamson’s robbery conviction falls within the category of convictions that would ordinarily automatically disqualify him from adopting Abel. The criminal complaint, Mr. Adamson’s plea allocution and Mr. Adamson’s admissions establish uncontestedly that Mr. *716 Adamson, with a group of other men, forcibly stole property from the victim. Even if the court were to accept Mr. Adamson’s most recent description of the incident, that he did not hit the victim with an object, but that he only hit him with a bare fist in the jaw, this would not alter the court’s conclusion that this crime involved violence. Although Mr. Adamson claims that he did not see any injuries to the victim during the robbery, he does not contest the fact that the victim had his teeth knocked out, nose bloodied, and shoulder separated. Under these facts and circumstances, it would be disingenuous, and demeaning to the victim of this crime, for this court to conclude that this crime did not involve violence. Plainly, it did.
Contrary to Mr. Adamson’s contention, the fact that robbery is not specifically included in Social Services Law § 378-a (2) (e) (1) (A) (iv) is not dispositive. Although this provision specifically includes rape, sexual assault and homicide and specifically excludes assault as crimes involving violence, there is nothing in either the legislative history of this provision or the state or federal regulations promulgated thereunder that would indicate that the listed crimes are exhaustive, and not merely illustrative, of crimes involving violence. Indeed, OCFS, the agency vested with statutory authority to make an initial determination with respect to which category a conviction falls within, has promulgated an official list of crimes, the conviction of which would result in the automatic disqualification of prospective foster or adoptive parents, that goes far beyond the crimes specifically designated in the statute. (See OCFS, Criminal History Record, Adoption and Safe Families Act Review Standards, Official List [rev Dec. 1, 2010].) Included on this list as “crime[s] involving violence” are, with minor modifications, all of the class B, C and D violent felonies as defined in Penal Law § 70.02, including robbery in the first and second degrees, as well as such crimes as burglary in the first and second degrees, criminal possession of a weapon in the second and third degrees, and any attempt to commit any of these crimes. Thus, the court rejects Mr. Adamson’s interpretation of the statute as much too narrow.
Equally unavailing is Mr. Adamson’s argument that robbery in the third degree is not a mandatory disqualifying conviction because it is not included on the official OCFS list of mandatory disqualifying convictions, and because it is not defined in the Penal Law as a violent felony. To be sure, the statute confers upon OCFS authority to make an initial determination with re *717 spect to whether a conviction falls within the category of offenses that require disqualification of prospective foster and adoptive parents. However, equally certain is that this court is not bound by OCFS’s interpretation of the statute. (See Domestic Relations Law § 114 [1] [the court determines if best interest of the child is promoted by adoption]; see also Christensen v Harris County, 529 US 576, 587 [2000] [agency interpretations of statutes that are contained in opinion letters, policy statements, agency manuals and enforcement guidelines do not warrant court deference, but are merely entitled to respect to the extent that they are persuasive].) Clearly, had the Legislature sought fit to include in this category of mandatory disqualifying convictions only those violent felonies as defined in Penal Law § 70.02 it could have explicitly done so. The Legislature could have simply used in this provision the words “a violent crime,” or “a violent felony as defined in Penal Law 70.02”; but instead, the Legislature chose the words, “a crime involving violence.”[6] By so choosing, the Legislature clearly signaled its intent to include, as mandatory disqualifying convictions, certain crimes, such as robbery in the third degree which, though not defined as violent felonies, may involve violent actions. (See 65 Fed Reg [No. 16] 4067-4068 [Jan. 25, 2000] [comments to the final rule amending 45 CFR parts 1355, 1356, 1357; words of the relevant federal regulation changed from “violent crime, including rape” to “crime involving violence, including rape,” so that certain crimes, such as robbery, which may involve violent actions, would be included in the governing federal regulation].)
Ordinarily, when a prospective adoptive parent has a conviction for a crime that mandates disqualification from becoming an adoptive parent, the foster care agency must remove the foster child from the home of that foster parent. (See Social Services Law § 378-a [2] [h].) Here, however, it is beyond cavil that Mr. Adamson has rehabilitated himself and that removal of Abel from this home would have a devastating impact upon Abel. Under the circumstances of this case, it is clear that to follow the strict mandate of the statute and deny Mr. and Mrs. Adamson’s petition to adopt Abel and to remove Abel from the home of his maternal cousin and her husband — the only *718 home he has ever known — based solely upon Mr. Adamson’s 1992 robbery conviction, would deprive both Abel and the Adamsons of their due process right to an individualized determination of whether this adoption is in Abel’s best interest. That right, to a case-specific determination, was firmly established almost 40 years ago in Stanley v Illinois (405 US 645 [1972]) when the United States Supreme Court struck down as violative of the Fourteenth Amendment Illinois’ irrebuttable statutory presumption that all unmarried fathers are unqualified to raise their children. The Court held that a hearing was required by the Due Process Clause, upon the death of the mother and prior to the removal of the children, to determine whether the father was fit to raise the children. In so ruling, the Court opined,
“procedure by [irrebuttable] presumption is always cheaper and easier than individualized determination. But when . . . the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child . . . [and] therefore cannot stand.” (Id. at 656-657; see also Vlandis v Kline, 412 US 441, 446 [1973] [statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments].)
This court cannot ignore the present reality of the Adamson family. Therefore, based upon the Due Process Clauses of the New York State and United States Constitutions, this court finds that Social Services Law § 378-a (2) (e) (1) and (h), as applied to the facts of this matter, violate Mr. and Mrs. Adamson’s and Abel’s right to a determination, based on the totality of the circumstances, as to whether the adoption of Abel by the Adam-sons is in Abel’s best interest.[7] (See also Matter of Corey, 184 Misc 2d 437 [Fam Ct, Greene County 1999]; Matter of Jonee, 181 Misc 2d 822 [Fam Ct, Kings County 1999].) When the court. *719 examines the totality of the circumstances presented here, including the adoption home study, an addendum to that home study, and the affirmation of the attorney for the child, notwithstanding Mr. Adamson’s criminal past, it has no doubt that it is in Abel’s best interest to be adopted by Mr. and Mrs. Adamson. Accordingly, the court grants the petition by Mr. and Mrs. Adamson to adopt Abel.

. The names of the parties have been changed for the purpose of publication.

. On April 20, 2009, this court terminated Abel’s biological mother’s parental rights, found that there was no male entitled to consent to, or notice of, any prospective adoption of Abel, and transferred the care and custody of Abel to New York Foundling. On November 18, 2010, this court’s order was affirmed by the Appellate Division, First Department.

. Mrs. Adamson has no criminal history and neither Mr. nor Mrs. Adam-son has any history involving child neglect or abuse. Because Mrs. Adamson is *714 married to Mr. Adamson, she, alone, cannot adopt Abel. (See Domestic Relations Law § 110.)

. This court is well aware that the statute as amended does not apply to foster or adoptive parents who were convicted of disqualifying offenses prior to October 1, 2008, who were certified or approved as foster or adoptive parents prior to October 1, 2008. (See Social Services Law § 378-a [2] [e] [4], [5]; Senate Introducer’s Mem in Support, Bill Jacket, L 2008, ch 623; 18 NYCRR 421.27 [d] [1].) However, both the certificate and approval to board Abel are solely in the name of Mrs. Adamson, and, according to New York Foundling, Mr. Adamson was not approved to adopt Abel until June 18, 2009.

. Since assault is specifically excluded from the above-cited provision and since Mr. Adamson’s assault conviction was both a misdemeanor and occurred over five years ago, there is no doubt that, unlike the robbery conviction, the assault conviction falls within the category of convictions for which the court has discretion to approve or deny the petition to adopt. (See Social Services Law § 378-a [2] [e] [3] [A].)

. Indeed, in 2000, the Family Court Advisory and Rules Committee recommended changing the statutory language from “crime involving violence” to the more limiting “other crime involving the infliction or attempted infliction of serious physical injury.” (See Report of the Family Court Advisory and Rules Committee, at 13, 16 [Dec. 1999] [new Adoption and Safe Families Act-related proposals].) To date, this recommendation has not been acted upon.

. Pursuant to CPLR 1012 (b), the Attorney General of the State of New York was served notice of his right to intervene because a constitutional issue had been raised in this matter. By letter dated August 17, 2011, the Attorney General declined to intervene in support of the constitutionality of this provision of the statute, but in its letter, requested that the court defer to OCFS’s determination that Mr. Adamson’s conviction of robbery in the third degree did not automatically disqualify him from adopting Abel.