Filed 3/26/20

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re C.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E072671 |
| Plaintiff and Respondent, | (Super.Ct.No. J271063) |
| v. | OPINION |
| A.P., | |
| Defendant; | |
| M.P. et al., | |
| Interveners and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. Steven A. Mapes, Judge. Reversed and remanded with instructions.

Patricia K. Saucier, under appointment by the Court of Appeal, for Objectors and Appellants.

Michelle D. Blakemore, County Counsel and Svetlana Kauper, Deputy County Counsel, for Plaintiff and Respondent.

1

In this appeal, the maternal grandparents of C.P., the child who is the subject of this dependency matter, argue that the absolute statutory bar to placement of the child in their custody, either through approval as a resource family pursuant to Welfare and Institutions Code[1] section 16519.5 or on an emergency basis pursuant to section 361.4, is unconstitutional as applied to them.[2] The bar is triggered in this case by a disqualifying misdemeanor criminal conviction suffered by grandfather in 1991. We agree with grandparents that the absolute statutory bar to placement of the child in their custody would be unconstitutional as to them *if* they can establish that they have a *parental* relationship with the child, not just a grandparental relationship. We remand to the trial court to make the predicate factual findings and consider the issue anew from that perspective.

## I. FACTUAL BACKGROUND

The child (born 2011) was removed from mother's custody in May 2017, after he was sexually abused by a maternal uncle; at the time of removal, mother, child, and uncle all resided in the home of the grandparents. The uncle is now incarcerated on a 20-year sentence for child molestation. Mother has been out of contact with CFS, and reportedly has moved out of state. The child was initially placed with a foster family, but in June

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

[2] The maternal grandparents are objectors and appellants M.P. and S.P. The child's mother, alleged father, and paternal grandparents are not parties here.

2017 he was moved to a group home capable of addressing his special health care needs related to autism.

Mother failed to reunify with the child. The child was ordered to remain in the group home under a planned permanent living arrangement, with the goal of identifying an appropriate placement for legal guardianship.

The grandparents started the resource family approval process, with the goal of having the child placed in their care, almost immediately after the child was removed from mother's custody in May 2017. The grandparents have been involved in the regular child and family team meetings for the child, and at least at some points have been designated as the educational rights holders for the child. They have also maintained contact with the child, making a two-hour drive to visit with him weekly once their visitation was approved in October 2017; a social worker characterized grandparents as the "only constant" in the child's life. The grandparents' visitation was initially supervised, but in November 2018 "four hour Saturday visits off site" were approved. The child was allowed to spend almost two weeks in the grandparents' home for the 2018 holidays, staying with them from December 21, 2018 to January 2, 2019. By January 2019, in the judgment of the group home, the child had made "significant progress" with respect to his developmental issues, and was "ready and willing to transition into living with his grandparents," though a transition to a different placement would raise concerns due to his "need for routine and anxiety with new places/situations." In February 2019, with the agreement of the social worker, the juvenile court gave CFS authority to allow

grandparents to have overnight and weekend visitation with the child on the condition that the child was to have no contact with anyone CFS had not approved.

During the process, however, a criminal background check revealed that the grandfather had a 1991 misdemeanor conviction under Penal Code section 273d, which is disqualifying under Health and Safety Code section 1522. (See Health & Saf. Code, § 1522, subd. (g)(2)(A)(i) [prohibiting exemption for resource family applicant with conviction under Pen. Code, § 273d prior to January 1, 1994].) Penal Code section 273d applies to "[a]ny person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition . . ." (Pen. Code, § 273d, subd. (a).) According to grandfather's account of the circumstances giving rise to this conviction—the only account in our record—he pleaded no contest, and was sentenced to probation and required to take anger management classes after he was accused of pushing his wife and son during, or while trying to walk away from, an argument.

Grandfather successfully took steps to have his name removed from the Child Abuse Central Index (CACI), the database maintained by the California Department of Justice regarding reports of known or suspected child abuse or severe neglect. (See *In re C.F.* (2011) 198 Cal.App.4th 454, 462-463 [discussing CACI and process of removing reports from CACI].) Grandfather also obtained a dismissal of the charge pursuant to Penal Code section 1203.4.[3] Nevertheless, in November 2018, CFS issued grandfather a

---

[3] Penal Code section 1203.4 allows a defendant who successfully completes probation to petition the court to set aside his or her guilty plea and dismiss the complaint or information. (*People v. Mazumder* (2019) 34 Cal.App.5th 732, 745.) "If granted,

4

"Notice of Action to Individual Regarding Resource Family Approval Criminal Record Exemption Decision," stating that the grandparents' application for resource family approval must be denied because of the grandfather's conviction. The grandparents filed an administrative appeal of that decision. Our record does not reveal what disposition, if any, was reached in that administrative appeal, though we can infer that it has not been resolved in the grandparents' favor, since they continue to pursue this appeal.[4]

During a team meeting in January 2019, the child stated "'I love my grandma and grandpa and I want to live with them forever.'" At a post permanency review hearing in February 2019, the child again expressed that he wished to live with the grandparents by stating "I want to go home," and confirming that "home" meant his grandparents' house. The child's counsel noted, however, that "placement is not looking likely anytime soon" because of grandfather's "nonexemptible criminal history and prior CACI hits." The juvenile court appointed counsel for the grandparents, and requested briefing on the issue of whether a "misdemeanor 28 years ago" could preclude any exercise of "independent judgment" regarding the child's placement.

---

section 1203.4 relief provides substantial benefits . . . ." (*Ibid.*) Nevertheless, it "'"does not purport to render the conviction a legal nullity"'" and it "'does not, properly speaking, "expunge" the prior conviction.'" (*Ibid.*)

[4] In any case, CFS has never argued that the grandparents required to exhaust all administrative remedies before challenging the denial of an exemption in the juvenile court. (See *Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 67 ["[T]he defense of failure to exhaust administrative remedies may be waived if not properly or timely raised."]; see also *In re N.V.* (2010) 189 Cal.App.4th 25, 31 [noting several exceptions to the doctrine of exhaustion of administrative remedies that apply to a challenge to an agency determination that a relative's home would be unsuitable for placement of a dependent child].)

Counsel for CFS filed a memorandum of points and authorities arguing that placement of the child with the grandparents without a criminal record clearance or exemption was barred by statute, that grandfather's conviction was nonexemptible, and that obtaining relief under Penal Code section 1203.4 did not render the conviction a nullity or exemptible for purposes of determining whether placement of the child would be permissible. Grandparents' counsel filed a memorandum of points and authorities, arguing that CFS had abused its discretion in denying the grandfather's exemption request, and asking that the juvenile court "order the department to reevaluate" the request.

At a hearing in April 2019, the juvenile court agreed with CFS's analysis of the law, and denied "the grandparents' request to be reassessed . . . ."

## II. DISCUSSION

We consider here whether the absolute statutory bar to placement of the child with grandparents, triggered by grandfather's misdemeanor conviction from 1991, is unconstitutional as applied.[5] If this question is answered in the affirmative, CFS should be required to reconsider grandparents' request for an exemption starting from the premise that grandfather's conviction is generally disqualifying but potentially exemptible in exceptional circumstances, based on an individual analysis. We hold that

_____

[5] Grandparents did not raise this constitutional issue in the juvenile court. Nevertheless, we exercise our discretion to reach the issue. (See *Los Angeles Unified School District v. State of California* (1991) 229 Cal.App.3d 552, 555 ["belatedly raised" constitutional issue that involves "a purely legal question involving no disputed facts" may be considered for the first time on appeal].)

if the trial court finds that grandfather has a parental relationship with C.P., he is entitled to an individual analysis of his exemption request, rather than the application of an absolute statutory bar, and that the circumstances here may warrant an exemption being granted.

A. *Background Regarding Resource Family Approval Process*

The resource family approval process is intended to be an expedited assessment of individuals and families to provide foster care and become legal guardians or adoptive families for dependent children. (§ 16519.5, subd. (a).) A resource family is "an individual or family that has successfully met both the home environment assessment standards and the permanency assessment criteria" established by statute and the State Department of Social Services. (*Id.*, subds. (c), (d).)

The home environment assessment standards include a "criminal record clearance of each applicant and all adults residing in, or regularly present in, the home . . . ." (§ 16519.5, subd. (d)(2)(A)(i)(I).) If the background check of such individuals indicates that any of them has been convicted of "an offense described in subparagraph A of paragraph (2) of subdivision (g) of Section 1522 of the Health and Safety Code, home approval *shall be denied*." (§ 16519.5, subd. (d)(2)(A)(i)(III), italics added.) As relevant here, these offenses include a conviction under Penal Code section 273d dating from prior to January 1, 1994. (Health & Saf. Code, § 1522, subd. (g)(2)(A)(i).) The "approving entity"—here, CFS—may grant an "exemption from disqualification" for some offenses, if the applicable criteria are met, but pre-1994 Penal Code section 273d

offenses are among those that are categorically nonexemptible.[6] (See § 1522, subd. (g)(2)(B)-(D).) Dismissal of a conviction under Penal Code section 1203.4 does not render the conviction either a nullity or exemptible for purposes of determining whether a conviction is disqualifying. (*Los Angeles County Dept. of Children & Family Services v. Superior Court* (*Cheryl M.*) (2003) 112 Cal.App.4th 509, 518-519.)

When resource family approval has not yet been granted, a child may be placed on a temporary emergency basis with a relative or nonrelative extended family member. (§§ 309, subd. (d), 361.45.) Again, however, criminal background checks are required before placement, and the standards set out in Health and Safety Code section 1522 apply; if an adult residing in or regularly present in the home has a conviction under an offense described in Health and Safety Code section 1522, subdivision (g)(2)(A), "the child shall not be placed in the home . . . ." (§ 361.4, subd. (b)(5).)

B. *Standing*

CFS argues that the grandparents lack standing because they were not "directly injured" by the juvenile court's order that the child remain in his current placement. We reject this argument.

In substance, grandparents' constitutional challenge is fairly construed not as a challenge to the juvenile court's order regarding the child's placement, but rather its

---

[6] Formerly, the county agency would apply to the State Department of Social Services for approval of the exemption, but the relevant statutes have been amended. (See *Los Angeles County Department of Children and Family Services v. Superior Court* (*Valerie A.*) (2001) 87 Cal.App.4th 1161, 1166-1167 [discussing former procedures for exemptions].)

rejection of their request that CFS be required to reassess them for approval as a resource family.[7] That rejection is an order after judgment, appealable under section 395, subdivision (a). (§ 395, subd. (a)(1) ["A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment"].) The grandparents were directly "aggrieved" by the juvenile court's denial of their request, in that they have a legally cognizable interest that is injuriously affected by the decision. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 948; see also *In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053 [agency conceded that relatives denied criminal records exemption had standing to challenge the denial; Court of Appeal found child and parent whose parental rights had not yet been terminated also had standing].) Moreover, we are required to "liberally construe the issue of standing and resolve doubts in favor of the right to appeal." (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540.)

---

[7] The remedy grandparents request on appeal is different from the one requested in the juvenile court. In the juvenile court, grandparents requested an order that CFS "reevaluate [their] request for an RFA exemption." In this appeal, now represented by different counsel, they ask that we "reverse the juvenile court's findings and orders made pursuant to section 361.4" and "remand for a hearing to determine whether placing [the child] with [the grandparents] is in [the child's] best interests." In our view, grandparents' trial counsel better framed the appropriate remedy. As grandparents' trial counsel noted, the juvenile court "does not have the authority to order placement of [the child] with the grandparents." It can find, however, that CFS misunderstood the scope of its discretion in denying an exemption request, and order it to reconsider the issue under the appropriate legal standard. (See *In re M.L.* (2012) 205 Cal.App.4th 210, 227 [juvenile court's finding that the agency had abused its discretion in denying exemption request did not give it authority to grant exemption request or place child in the home of party requesting exemption].)

9

We find that grandparents have standing, and turn to the merits of their challenge to the juvenile court's order.

C. *Separation of Powers*

The grandparents contend that the statutory bar to placement of the child with them because of the grandfather's conviction violates the doctrine of separation of powers "by giving the legislature, instead of the juvenile court, the power to determine the best interests of the children, especially where it does so without fully considering the totality of the child's circumstances."

Grandparents offer no authority establishing that determination of a dependent child's best interests generally, or the determination of whether to place a child with someone despite a prior criminal conviction more specifically, should be viewed as constitutionally vested only in the judicial branch. (See *Carmel Valley Fire Prot. Dist. v. State of California* (2001) 25 Cal.4th 287, 298 (*Carmel Valley*) [purpose of separation of powers doctrine "'is to prevent one branch of government from exercising the *complete* power constitutionally vested in another' . . . "].)  To the contrary, all three branches of government are properly involved.  For example, the decision to grant or deny a criminal records exemption is an executive one subject to administrative review. (*In re M.L.*, *supra*, 205 Cal.App.4th at p. 227.)  The judiciary may review an agency's ruling on an exemption request as part of the dependency proceeding, as the juvenile court did here, or on writ review from denial of administrative relief. (*In re Esperanza C.*, *supra*, 165 Cal.App.4th at pp. 1058-1059.)  The judiciary reviews the agency's decision for abuse of

10

discretion.  (*Id.* at pp. 1049-1050.)  The scope of that discretion is defined by the statutes enacted by the Legislature.  (See *State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 750 ["Essentials of the legislative function include the determination and formulation of legislative policy"].)

Grandparents emphasize that section 362, subdivision (a), grants the juvenile court the power to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance and support of the child . . . ."  They ignore, however, that this statute, adopted by the Legislature, is also subject to limitations set by the Legislature.  The doctrine of separation of powers does not apply here.

D.  *Due Process*

Grandparents concede that the juvenile court correctly determined that, under the statutory scheme, grandfather's conviction is nonexemptible.  They contend, however, that because that statutory scheme places an absolute bar on the child ever being placed with them, based solely on the Penal Code section of grandfather's conviction and not on any individualized determination of their circumstances, it violates their constitutional right to due process.  We agree that the absolute statutory bar may be unconstitutional as to grandparents, and therefore unenforceable as to them, depending on factual findings that need to be made by the trial court in the first instance.

 "The due process clause protects substantive fundamental liberty interests against unreasonable government interference."  (*In re H.K.* (2013) 217 Cal.App.4th 1422, 1432.)  In addressing a substantive due process argument, we first identify the liberty

11

interest asserted and then determine whether it is a fundamental right that is "'"deeply rooted in this Nation's history and tradition . . . ."'" (*Ibid.*) "When a statutory classification impinges on a fundamental right, it is subject to strict scrutiny review." (*Id.* at p. 1433.) "If a statute does not implicate a fundamental right or operate to the singular disadvantage of a suspect class, only a rational relationship to a legitimate state purpose is necessary to uphold the constitutional validity of the legislation." (*Ibid.*) We apply the de novo standard of review to constitutional questions. (*Ibid.*)

Courts have generally rejected the proposition that grandparents, in their capacity as grandparents and without more, have a constitutionally protected interest in their relationship with the grandchild. (See *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1508 [noncustodial grandparent of juvenile court dependents have no substantive due process right to free association with minors, or to maintain a relationship with them]; *In re R.J.* (2008) 164 Cal.App.4th 219, 225 [recognizing absence of authority for the proposition that a grandparent has a constitutionally protected interest in the custody and care of his or her grandchild]; *Miller v. California* (9th Cir. 2004) 355 F.3d 1172, 1175 ["While there is no question that *parents* have a constitutionally protected liberty interest in making decisions about the care, custody, and control of their children [citations], we have never held that any such right extends to *grandparents*"]; but see *Drollinger v. Milligan* (7th Cir. 1977) 552 F.2d 1220, 1227, fn. 6 [stating, without further analysis: "The nuclear family has traditionally constituted the unit afforded the protection of due

12

process. We see no reason, however, not to extend this guaranty to the grandfather-grandchild relationship"].)

It is well-established, however, that essentially *parental* bonds may develop between a child and a caregiver, including a grandparent, who are not biologically parent and child, and courts have often found these parental relationships to be constitutionally protected. (See *In re H.K.*, *supra*, 217 Cal.App.4th at p. 1435; see also *In re Bridget R.* (1996) 41 Cal.App.4th 1483, 1503-1504, 1507, superseded by statute on another ground as stated in *In re Santos Y.* (2001) 92 Cal.App.4th 1274, 1311-1312 [finding children in care of prospective adoptive parents to have a "*presently existing* fundamental and *constitutionally protected* interest in their relationship with the only family they have ever known"].) Grandparents argue that their bond with the child falls within this constitutionally protected category of relationship.

Grandparents rely primarily on New York authority involving circumstances where the child had long been living with the caretakers *as parent and child*. In *Matter of Abel* (N.Y. Fam. Ct. 2011) 33 Misc.3d 710, the child had formed an "'inseparable bond'" with maternal relatives who had served as his parents since his birth and who wished to adopt him, but were disqualified from adopting by a conviction from 12 years before the child was born. (*Id.* at pp. 711-713.) The children in *In re Adoption of Jonee* (N.Y. Fam. Ct. 1999) 181 Misc.2d 822 had lived for seven years with an aunt who wished to adopt them, who they "viewed as a 'loving parent,'" and with whom they shared a "'deep bond.'" (*Id.* at pp. 824-825.) The children were nevertheless being removed from the

aunt's custody solely because of a 20-year-old conviction. (*Ibid.*) *In re Adoption of Corey* (N.Y. Fam. Ct. 1999) 184 Misc.2d 437 involved children placed in an unrelated foster family with whom they had developed a closely bonded parental relationship, and who desired to adopt them. (*Id.* at pp. 439-440.) The children were placed in the home before a new statute disqualified the parents from custody of the children, let alone adoption, because of a prior conviction suffered by the prospective adoptive father, who had since gotten sober and otherwise fully engaged in rehabilitating himself. (*Id.* at pp. 439-441.) In each of these cases, the New York courts found that the absolute statutory bar disqualifying the parents violates state and federal constitutional rights, reasoning that due process required an individualized determination of whether maintaining the parental relationship would be in the children's best interests, regardless of the parents' prior convictions. (*Matter of Abel, supra*, at pp. 717-718; *In re Adoption of Jonee*, *supra*, at p. 829; *In re Adoption of Corey*, *supra*, at pp. 446-447.)

We are persuaded that the reasoning of these New York courts, grounded in federal constitutional principles, applies equally well in this state. A permanent, irrebuttable statutory presumption regarding certain convictions—no matter what the underlying facts, no matter how long ago, and no matter the characteristics of the parent apart from the conviction—may not, consistent with the California State and United States Constitutions, absolutely disqualify an adult who shares a *parental* bond with a child from ever having that child placed in their care. Due process principles require, at the least, an individualized, case-by-case analysis, rather than the placement of an adult

14

with a parental relationship in a category as broad as the one in which grandfather has been placed.  The prohibition here encompasses even, for instance, very old misdemeanor convictions where a child was not physically harmed.  As applied, the absolute bar at issue may work an unreasonable government interference with parental rights.

On the present record, we find it possible that grandparents have developed a relationship with the child that amounts to the sort of "bonded, quasi-family relationship that courts have found worthy of protection as a fundamental interest."  (*In re H.K.*, *supra*, 217 Cal.App.4th at p. 1435.)  Among other things, the record makes it obvious that the child loves his grandparents and views their house as his "home."  As well, a social worker viewed grandparents as the "only constant" in the child's life—and endorsed overnight, unsupervised visitation, sometimes extended for days and even weeks at a time—which also supports the conclusion that grandparents have served a fundamentally parental role in the child's life.

Moreover, on the present record, we find it plausible that, absent the absolute statutory bar, CFS would have found grandfather's conviction to be exemptible.  In the absence of an absolute statutory bar cutting short the analysis, an agency considering whether to grant a criminal records exemption is required to consider factors "including, but not limited to, the following as evidence of good character and rehabilitation: the nature of the crime and whether it involved violence or a threat of violence to others; the period of time since the crime was committed and the number of offenses; circumstances surrounding the commission of the crime that would demonstrate the unlikelihood of

15

repetition; activities since conviction, including employment, therapy or education; a full and unconditional pardon or certificate of rehabilitation; character references; and honesty and truthfulness in the exemption application process." (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1056 (*Esperanza C.*))

We emphasize that the Legislature's determination that an offense constitutes an absolute bar to placement must still be considered as the starting point in the analysis when it applies, even though due process requires that a person who has a parental relationship with a child receive a more individualized determination when placed in a broad category for disqualification.[8] And for crimes normally subject to an absolute statutory bar on exemptions, the first factor listed in *Esperanza C.*—the nature of the crime and whether it involved violence or a threat of violence to others—will often weigh strongly, even dispositively, in favor of denial. That may not be so, however, for a misdemeanor conviction like grandfather's, which arose, so far as we can tell from the record, from circumstances involving only minimal violence and no injury to any victim. Also, the other factors, so far as we can determine, are either neutral or weigh in favor of

---

[8] Consistent with cases applying the due process clause to require an individual determination where persons are placed broad regulatory or statutory categories, we believe the absolute statutory bar must be a starting point for the analysis, even if constitutional considerations require departure from that default position. (See *In re Humphrey* (2018) 19 Cal.App.5th 1006, 1044-1045 [describing bail amount from schedules as "starting point" and "default position," even though individualized inquiry required to make final determination of amount necessary to secure defendant's appearance]; *Beckles v. United States* (2017) 137 S.Ct. 886, 894 [describing federal sentencing guidelines as "'the starting point and the initial benchmark' for sentencing" after *United States v. Booker* (2005) 543 US. 220, 259, even though individualized assessment is constitutionally required.)

16

granting grandfather an exemption. Among other things, grandfather's offense was committed in 1991; although he has not obtained a pardon, he has obtained dismissal of the charge pursuant to Penal Code section 1203.4; and we have no reason to conclude he has committed any other crimes, or otherwise failed to show good character and complete rehabilitation.

Nevertheless, the record we have before us is limited, and in this appeal, at least, CFS has contested whether grandparents' relationship with the child should be viewed as parental. We cannot determine how long the child and his mother were living with grandparents before the child was removed, and the record has only sparse information about the circumstances of that cohabitation. The child resided in the grandparents' house, but it was the child's mother who had custody of him. By the April 2019 hearing, the child had not resided with the grandparents for two years. By the time this opinion issues, approximately another year of the child living in a group home will have elapsed. Our limited record shows no reason to conclude that the child has formed parental bonds with any other parental figures during this time. Although visitation with grandparents was going well as of April 2019, nothing in the record speaks to current circumstances, whether positive or negative. Furthermore, our record contains only grandfather's own, possibly self-serving description of the circumstances giving rise to his 1991 conviction. It may be that there is another side to that story that needs to be taken into account in deciding whether an exemption *should* be granted, even though we hold due process

17

would require an individualized determination, if it is determined that grandparents have a *parental* relationship with the child.

In other dependency contexts, the existence of a parental relationship is generally a factual determination for the juvenile court to make in the first instance. (See, e.g., *In re Anthony B.* (2015) 239 Cal.App.4th 389, 395 [regarding determination of whether there is a beneficial parental relationship for purposes of statutory exception to termination of parental rights].) Here, grandparents' constitutional argument, premised on the existence of a parental relationship with the child, was raised for the first time on appeal, so the juvenile court has never had the opportunity to consider whether their relationship with the child is the sort of "bonded, quasi-family relationship that courts have found worthy of protection as a fundamental interest." (*In re H.K.*, *supra*, 217 Cal.App.4th at p. 1435.) We conclude that the matter should be remanded for the trial court to make that predicate factual determination in the first instance.

## III. DISPOSITION

The juvenile court's order denying grandparents' request for an order that CFS reassess their application to be approved as a resource family is reversed, and the matter is remanded for the trial court to take evidence and make factual findings about whether grandparents' relationship with the child is the sort of "bonded, quasi-family relationship" that should be deemed "worthy of protection as a fundamental interest." (*In re H.K.*, *supra*, 217 Cal.App.4th at p. 1435.). If the juvenile court finds that grandparents' relationship with the child is worthy of such protection, it shall direct CFS

18

to reassess grandparents' request for a criminal records exemption on an individualized basis, applying the legal standard articulated in this opinion.  If the juvenile court finds that grandparents' relationship with the child is not worthy of such protection, it shall again deny grandparents' request that CFS be directed to reassess grandparents' application.

CERTIFIED FOR PUBLICATION

RAPHAEL
J.

We concur:

CODRINGTON
Acting P. J.

SLOUGH
J.

19